BRIDGES, J.,
for the Court:
¶ 1. Richard “Pete” Magee and Linda Magee married in 1976 and agreed to a divorce on the ground of irreconcilable differences in 1993. Pursuant to their divorce, the Lauderdale County Chancery Court ordered Pete to pay Linda $1,600 per month in permanent periodic alimony. In 1996, Pete filed a motion to reduce alimony based on the fact that Linda was earning income which she was not earning at the time of the divorce. The chancellor denied this motion. In 1998, Pete’s position with Nabisco was eliminated, and he accepted a lesser position with a reduction in salary. Pete filed another motion to modify alimony claiming that because of his reduction in income he was unable to pay the $1,600 per month alimony payment. The chancellor also denied this motion. Feeling aggrieved, Pete appeals, citing the following assignments of error, which we quote verbatim from his brief
1. DID THE CHANCELLOR BELOW MANIFESTLY ERR IN FINDING THAT THE EVIDENCE DOES NOT ESTABLISH A MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCES JUSTIFYING A REDUCTION IN PETE MAGEE’S PERIODIC ALIMONY OBLIGATIONS?
2. DID THE CHANCELLOR BELOW ABUSE HER DISCRETION BY REQUIRING PETE TO PAY LINDA’S ATTORNEY FEES FOR THE MODIFICATION PROCEEDING DESPITE THE LACK OF ANY EVIDENCE SHOWING THAT LINDA COULD NOT PAY HER OWN ATTORNEY AND THE ABSENCE OF ANY FINDING BY THE CHANCELLOR THAT LINDA WAS IN FACT UNABLE TO PAY?
Linda counters that the chancellor’s decision is based upon substantial evidence.
¶ 2. Finding no merit to the issues raised, we affirm the judgment of the chancery court.
I. FACTS
¶ 3. Pete and Linda Magee married on April 15, 1976. The parties divorced in 1993, and Pete was ordered to pay $1,600 per month in permanent periodic alimony. At the time of their divorce in 1993, Pete was employed with Nabisco. Pete’s gross monthly income was $4,741 plus his additional annual bonuses. Linda, at the time of the divorce, was not permanently employed and had no income except for modest wages from two weeks of temporary employment. By April 1995, Linda had obtained permanent employment as a deputy circuit clerk for Lauderdale County. At that point, her salary was $1,500 per month ($18,000 annually), plus health insurance and benefits afforded to state employees. In 1996, Pete filed a motion to reduce his alimony payments based on the fact that Linda was now permanently employed and had received an increase in income. The chancellor denied the motion finding that Pete was making more income than at the time of the divorce and he was not unable to pay. The chancellor also found that Linda depended on the alimony payments to maintain her standard of living, and she had not yet attained her earning capacity which was estimated to be between $20,000 and $22,000.
¶ 4. Subsequent to these proceedings in 1996, Pete’s employment situation with Nabisco changed. Due to the company’s reorganization, Pete’s scale nine position as manager of retail development was eliminated. Nabisco then offered Pete a scale five position which he accepted. This caused a reduction in income from approxi *1278 mately $63,000 to $43,000 (not including bonuses). After his reduction of income in 1998, Pete filed another motion to modify alimony claiming that the reduction rendered him unable to make alimony payments to Linda. Linda’s own employment situation had also changed in April of 1998. Linda voluntarily left her position as a deputy circuit clerk and took a lower paying position in the audit department of Great River Insurance Company. This employment change reduced Linda’s income from $20,625 to $18,100 plus a five percent IRA contribution at the end of the year. At the hearing in 1998, Linda’s monthly expenses, including the house note, amounted to $2,955.50. Pete’s monthly expenses (excluding alimony) amounted to $3,294. The chancellor found that the evidence presented at the hearing did not show a material, substantial change in circumstances of the parties that would justify a reduction in alimony.
II. PROCEEDINGS BELOW
¶ 5. Pete first filed a motion to modify his alimony payments in 1996. Pete argued in his motion that Linda was earning income which she was not earning at the time of the divorce, and he should be relieved of his obligation to pay alimony or his obligation should be reduced. The chancery court denied this motion based on the fact that Linda had not reached her full earning capacity of $20,000 to $22,000, she relied on the alimony payments to maintain a reasonable standard of living, and Pete was making even more money than he was at the time of the original award of $1,600 per month alimony. The chancellor found that Pete’s base pay had increased from the time of divorce and that he was still able to make the $1,600 per month payment. The court further found that taking away Linda’s alimony would force her to reduce her standard of living and she should not be penalized for her efforts to improve her living situation.
¶ 6. In 1998, Pete filed another motion to modify, this time arguing that a substantial and material change in circumstances had occurred because his income had substantially decreased while Linda’s had increased. The chancellor compared and evaluated the parties’ income and expense statements and found that in spite of the reduction in Pete’s income, his salary was still handsome and considerably more than Linda’s income. The court noted that despite the decrease in Pete’s income, he continued to set money aside for early retirement, contributed to his company’s 401(k) plan, and had $47,359 in equity in his new home. By comparison, Linda had only $27,704 in equity in her home with her one “luxury” being paying $150 per month for her grandson’s education. The chancery court found that Pete’s increase in his expenses that resulted from the purchase of the new house should not be considered a change in circumstances that would reduce his obligation to make alimony payments to Linda. After conducting calculations as outlined in Nichols v. Nichols, 254 So.2d 726, 727 (Miss.1971), the chancellor determined that Linda’s annual income amounted to $37,800 (including alimony payments) while Pete’s amounted to $42,439.32 (after alimony payments). The chancellor concluded that even with Pete’s reduced income, he still had sufficient income to have a decent standard of living. The chancellor denied Pete’s motion to modify and found there was no evidence of a material, substantial change in circumstances that justified a reduction in the amount of alimony payments. The chancellor also denied Pete’s request for attorney’s fees and ordered him to pay all court costs and attorney’s fees no later than September 30,1998.
ARGUMENT AND DISCUSSION OF LAW
A. Standard of Review
¶ 7. It is well established that our review in domestic relations cases is limited. The judgment of the chancery court will not be reversed unless we find it to be against the overwhelming weight of evi *1279 dence or manifestly in error. James v. James, 724 So.2d 1098 (¶ ll)(Miss.Ct.App,1998). The amount of an alimony award is largely within the discretion of the chancellor and “this discretion will not be reversed on appeal unless the chancellor was manifestly in error in the findings of fact or there was an abuse of the court’s discretion.” Id. This Court will not disturb the findings of the chancellor unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Turpin v. Turpin, 699 So.2d 560, 564 (¶ 14)(Miss.1997). In order to justify the modification of a divorce decree, there must be a material and substantial change in the circumstances of the parties arising subsequently to the entry of the decree. Varner v. Varner, 666 So.2d 493, 497 (Miss.1995). The change must also be “one that could not have been anticipated by the parties at the time of the original decree.” Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss.1990). In reviewing the chancellor’s decision, we will not disturb “his conclusions, notwithstanding that we might have found otherwise as an original matter” if substantial evidence exists to support his fact-findings. Dunn v. Dunn, 609 So.2d 1277, 1284 (Miss.1992).
B. Alimony

I. Did the chancellor err in finding that the evidence did not establish a material and substantial change in circumstances justifying a reduction in alimony ?

¶ 8. Periodic alimony may be modified by either increasing, decreasing, or terminating the award in the event of a material change of circumstances. Hubbard v. Hubbard, 656 So.2d 124, 129 (Miss.1995); Armstrong v. Armstrong, 618 So.2d 1278, 1281(Miss.1993); Shearer v. Shearer, 540 So.2d 9, 12 (Miss.1989). “The change must occur as a result of after-arising circumstances of the parties not reasonably anticipated at the time of the agreement.” Varner v. Varner, 666 So.2d 493, 497 (Miss.1995); Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss.1990). Circumstantial changes occurring within a short time from the original decree are changes which may be reasonably anticipated and do not therefore justify modification. Morris v. Morris, 541 So.2d 1040, 1043 (Miss.1989).
¶ 9. In the case sub judice, Pete argues that his reduction in income due to an involuntary change in his position with Nabisco is a substantial and material change in circumstances that warrants a reduction in alimony. Pete further contends that the chancellor incorrectly calculated his “current” gross income. The chancellor found Pete’s current gross monthly income to be $5,136.61. Pete agrees that this is an accurate figure as of July 1998, but he argues that the chancellor should have valued his current gross income as $4,335.67, the figure that his gross monthly income would drop to at the end of September 1998. Pete contends that in September he would no longer be receiving “income protection” or “differential” payments; therefore, the calculations and conclusions reached by the chancellor under Nichols were incorrect. Nichols v. Nichols, 254 So.2d 726, 727 (Miss.1971).
¶ 10. In Nichols, the Mississippi Supreme Court compared the gross income of the parties before and after alimony payments and found that due to the alimony payments, the wife had a much greater income and standard of living than the husband. Id. The supreme court stated that to determine the amount of alimony “consideration must be given to the rights of the husband to lead as normal a life as possible with a decent standard of living.” Id. “Once it is determined ... that the amount awarded is a sufficient benefit to the wife, there remains the duty of testing the extent of the correlative burden upon the husband.” Aldridge v. Aldridge, 200 Miss. 874, 27 So.2d 884, 885 (1946). In the case sub judice, the chancellor used the Nichols analysis and compared the current gross income of both Pete and Linda. Nichols, 254 So.2d at 727. The chancellor *1280 correctly used the income of the parties at the time of the hearing and determined that Pete made $42,439.32 annually (after alimony payments) while Linda made $37,-800 (including alimony payments). The chancellor concluded from her analysis under Nichols, that the alimony payments to Linda did not increase her income to an amount greater than Pete’s income. Id. The chancellor also cited Hockaday in which the Mississippi Supreme Court analyzed Nichols by stating a decrease in the amount of alimony is justified if it results in the wife having a “much greater standard of living.” Hockaday v. Hockaday, 644 So.2d 446, 449 (Miss.1994). After looking at evidence of the parties’ income and living expenses, the chancellor concluded that Linda did not have a greater income than Pete, nor did she have a greater standard of living than Pete.
¶ 11. The chancellor correctly used the analysis outlined by the Mississippi Supreme Court in Nichols and Hoc-kaday. Under this analysis, the chancellor compared the parties’ “current” gross income and their standards of living. Nichols, 254 So.2d at 727. The chancellor did not commit manifest error by using the income of the parties at the time of the hearing instead of a future, uncertain amount. This would not preclude Pete from filing the necessary petition for relief if and when his income actually reduced to an amount that caused Linda to receive a greater income and standard of living than that of Pete. Id. The appellant concedes that the amount the chancellor determined to be Pete’s current gross income is the accurate figure as of July. Although Pete’s current gross income had reduced since the 1993 divorce decree, the chancellor determined that Linda’s income did not exceed Pete’s income, nor did Linda have a greater standard of living than Pete. The chancellor also noted that personal bills such as a house note “cannot be used as a factor to reduce support payments.” Var-ner v. Varner, 666 So.2d 493, 497 (Miss. 1995). Pete cannot modify his alimony payments simply because he has incurred other debts. As we have previously stated, the chancellor has wide discretion in domestic cases, and our review on appeal is limited. The purpose of this Court is not to retry the case. The chancellor has the benefit of viewing the parties and hearing the parties’ testimony and evidence as it is presented during the trial. After reviewing the record, we believe that there is sufficient evidence to support the chancellor’s decision. The chancellor did not err in her analysis under Nichols, and there is sufficient evidence to show that the chancellor did not abuse her discretion. Accordingly, we find no merit to this issue.
C. Attorney’s Fees
¶ 12. Linda was awarded attorney’s fees in the amount of $2,625. Pete argues that the award to Linda was an abuse of discretion. At the time of the proceedings the gross annual income of Pete amounted to $ 42,439.32 and Linda’s gross annual income amounted to $37,800 (including alimony payments).
¶ 13. In addressing whether an award of attorney’s fees amounts to an abuse of discretion, we turn to the general rule of law that where “a party is financially able to pay her attorney, an award of attorney’s fees is not appropriate.” Smith v. Smith, 614 So.2d 394, 398 (Miss.1993) (citing Martin v. Martin, 566 So.2d 704, 707 (Miss.1990)). However, if the evidence presented shows an inability to pay the fees and a disparity in the relative financial positions of the parties, no error will be found. Powers v. Powers, 568 So.2d 255, 259 (Miss.1990). “The question of attorney’s fees in a divorce action is a matter largely entrusted to the sound discretion of the trial court.” Ferguson, 639 So.2d at 937.
¶ 14. In addressing this issue, the chancellor considered Linda’s monthly gross income of $3,150 and her monthly expenses which amounted to $2,955.50 and determined that Linda cannot afford to *1281 pay attorney’s fees. The chancery court also noted that it would be inequitable to require Linda to liquidate her $3,000 in savings (put aside from refinancing her home) to pay the cost of defending this action. The award of attorney’s fees is in the discretion of the chancellor. Linda testified during trial that she had no resources to pay the attorney’s fees, and the chancellor expressly found that Linda was unable to pay. On these findings of fact, we conclude that the chancellor was within her discretion in awarding Linda payment of her attorney’s fees. Accordingly, this assignment of error is without merit.
¶ 15. In addition, this Court would like to comment to the bar and the trial bench in cases similar in nature which fall within the purview of Rule 81(d) of the Mississippi Rules of Civil Procedure. The initiation of such actions should be by filing “complaints” or “petitions” and “counterclaims” or “cross-claims” (whichever might be appropriate), not “motions” as was done in this ease. See M.R.C.P. 81(d)(l-3), 81(f), and Comments to 81(d)(3) and 81(f). The judgment of the chancery court is affirmed.
¶ 16. THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., DIAZ, LEE, MOORE, PAYNE, AND THOMAS, JJ„ CONCUR. IRVING, J„ CONCURS IN RESULT ONLY.