LEE, J., for the court.
PROCEDURAL HISTORY AND FACTS
¶ 1. Gloria Vance Byars and William S. Byars, Jr. were married February 12, 1966, had two daughters, and then separated on October 30, 1990. On March 12, 1993, the chancellor granted William a divorce on the grounds of irreconcilable differences and awarded Gloria lump sum alimony. William later filed a petition for modification of the divorce decree in the Chancery Court of Calhoun County. On December 10, 2001, the chancellor granted the petition and terminated William’s obligation to pay alimony to Gloria. Gloria appeals to this Court asserting the following issues: (1) her lifestyle did not warrant the termination of alimony payments; (2) even if a change was warranted, the chancellor committed error in determining that William’s duty to pay alimony was terminated rather than suspended. Finding that the chancellor abused his discretion in finding that Gloria’s lifestyle warranted a change in alimony payments, we reverse and render.
DISCUSSION OF ISSUES
I. DID THE CHANCELLOR ERR IN TERMINATING ALIMONY PAYMENTS DUE TO GLORIA’S LIFESTYLE?
¶ 2. With her first issue, Gloria contends that the chancellor erred in terminating her alimony payments. Specifically, Gloria claims that her current relationship is not the type of relationship described in the separation agreement that would cease alimony payments. The pertinent section of the property settlement agreement is as follows:
Husband shall be relieved of the obligation to pay any monthly installment due at any time wife shall be lawfully married, or carry on a lifestyle with another man so as to afford said man sexual exclusivity and the benefits of marriage without ceremonial endorsement. ...
¶ 3. In alimony cases, the chancellor is afforded wide discretion, and we will not reverse his decision on appeal unless he was manifestly in error in his fact finding and abused his discretion. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Appellate courts need only to determine if the chancellor’s decision was supported by credible evidence. Lee v. Lee, 798 So.2d 1284(¶22) (Miss.2001).
¶ 4. The Mississippi Supreme Court has stated that in cases where the payor spouse seeks termination of alimony payments to the recipient ex-spouse on the grounds that the recipient ex-spouse is engaged in a sexual relationship with another or cohabiting with another, then the only issue properly before the court is whether the ex-spouse receives financial support from the partner/cohabitant and not the moral aspects of such relationship. Hammonds v. Hammonds, 641 So.2d 1211, 1216 (Miss.1994). Therefore, the court must determine whether there has been a material change in circumstances since the divorce to subject the spousal support to modification. Id. at 1215. In Ellis v. Ellis, 651 So.2d 1068, 1074 (Miss.1995), the Mississippi Supreme Court, pursuant to Hammonds, reversed and remanded to determine whether the recipient ex-wife was in fact cohabiting, whether she was being *149 supported by her lover (and vice versa), and whether her financial needs had changed.
¶ 5. In the present case, it is clear from the record that Gloria’s lifestyle did not provide her boyfriend with the benefits of marriage without ceremonial endorsement. Gloria testified that she had never lived with her boyfriend, that they had two separate lives, and that she had no plans to marry or move to be near him. In fact, Gloria lives in Batesville while her boyfriend fives in Grenada. Gloria further testified that her boyfriend does not help her maintain her home or pay bills, that they do not own any assets together, and that they have never commingled any of their finances. From the evidence before the chancellor, we find it a stretch to conclude that Gloria’s boyfriend received the benefits of marriage without the ceremonial endorsement. The chancellor’s comment about this was that once Gloria “became sexually active with one man, that was about the same as a marriage.” Finding that the chancellor abused his discretion in determining that Gloria’s sexual relationship amounted to a marriage, we reverse and render.
II. DID THE CHANCELLOR ERR IN DETERMINING THAT WILLIAM’S ALIMONY PAYMENTS TO GLORIA SHOULD BE TERMINATED RATHER THAN SUSPENDED?
¶ 6. Finding that the chancellor erred in terminating the alimony payments, we find this issue to be without merit.
¶ 7. THE JUDGMENT OF THE CHANCERY COURT OF CALHOUN COUNTY IS REVERSED AND RENDERED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEE.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, MYERS and CHANDLER, JJ„ CONCUR. IRVING, J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J. GRIFFIS, J., NOT PARTICIPATING.