868 So.2d 394 (2004)
Gloria MARSH, Appellant,
v.
Davis Gene MARSH, Appellee.
No. 2003-CA-00355-COA.
Court of Appeals of Mississippi.
March 16, 2004.
*395 William L. Bambach, Columbus, attorney for appellant.
Mark G. Williamson, Starkville, attorney for appellee.
Before KING, P.J., THOMAS and MYERS, JJ.
THOMAS, J., for the Court.
¶ 1. Gloria Marsh appeals the property settlement and alimony portions of the judgment of divorce entered by the Chancery Court of Oktibbeha County. Gloria assigns as error the following.
I. THE LOWER COURT ERRED IN ITS DISTRIBUTION OF MARITAL ASSETS BY NOT PROPERLY CONSIDERING SEVERAL FACTORS.
II. THE LOWER COURT ERRED IN NOT AWARDING GLORIA MARSH ALIMONY.
¶ 2. After review, we find no error by the chancellor and therefore affirm the judgment as rendered.

FACTS
¶ 3. Gloria and Davis Gene Marsh (Gene) were married in 1966. Two children were born of the marriage, Chad and Leslie, both now adults. Gene, aged sixty, has worked for Eagle Family Foods, Inc. since 1969. At the time of the divorce hearing, he was a plant manager earning a gross salary of $56,700 per year. Gloria, aged fifty-five, is a registered nurse, with an extensive work history in healthcare, including ownership of a personal care homes business from 1989 to February 2002. Gene contributed to the growth of the business by acting as general maintenance and handyman on a regular basis. In February 2002, Gloria pled guilty to the misdemeanor crime of abuse of a vulnerable adult, surrendered her license to operate personal care homes as part of a plea agreement and the business was closed.
¶ 4. During the course of the marriage, the Marshes acquired six parcels of residential real property. Three parcels were used as Gloria's personal care homes. One of these parcels was titled exclusively in Gloria's name, the remaining two were jointly titled with Gene. A fourth property was used as an office. The fifth property constituted the marital home. The sixth *396 parcel, a house and land located in Lowndes County, was titled: Gene held a one-quarter interest, Gloria held a one-half interest, and their daughter, Leslie, held a one-quarter interest.
¶ 5. Gloria filed a petition for divorce in December 2001, claiming habitual cruel and inhuman treatment and desertion as grounds. Gene filed a counter-complaint alleging habitual cruel and inhuman treatment. Both petitions sought divorce for irreconcilable differences as an alternative to the stated grounds. Three days before filing her petition, Gloria cashed out jointly held certificates of deposit, individual retirement accounts and a bank account totaling $64,550.51. Gloria also had in her possession approximately $70,000 in cash, kept in a strong box in the home. This cash was allegedly acquired by Gloria by keeping several of her patients "off the books," cashing the monthly checks for their care and keeping the funds for herself.
¶ 6. On January 29, 2002, an agreed order was entered in chancery court which froze the assets of the parties until a hearing on the divorce was had. A little over two weeks later, Gloria held a yard sale, selling the contents of the houses used in her business. Gloria also sold a Jeep Cherokee, locked two other vehicles in the garage of her aunt and placed one of the pieces of real property for sale. The lock box holding the $70,000 in cash was removed from the marital home. Gene sold a tractor and bush hog for approximately $14,000 although the exact date of this sale is uncertain.
¶ 7. On February 28, 2002, Gene sought a preliminary injunction to halt Gloria's sale of marital property in violation of the agreed order. The chancellor granted the motion and ordered an inventory and accounting of all assets, including those which had been disposed of already by either party. Gloria never fully complied with the inventory and accounting order; she never disclosed the disposition of the funds in the strong box nor did she account for the property sold at the yard sale or sale of the Jeep. In September 2002, Gene filed a petition for contempt against Gloria for her failures to comply with the various court orders.
¶ 8. The chancery court entered an agreed order for a divorce based upon irreconcilable differences on September 11, 2002, reserving for hearing all financial matters. The hearing took place that same day as well as the following day and Chancellor James Gore entered judgment on November 15, 2002. In that order, the chancellor granted Gloria assets with a net value of approximately $571,775.25. This consisted of the marital home and its contents, jewelry, a vehicle, sole ownership of one of the properties used in the nursing home business and half interest in another, one half of the contents of the strong box containing $70,000 in cash, one half of the amount of the CDs, IRAs and checking accounts she cashed out prior to filing the divorce petition, and one half of the proceeds she received from selling the contents of the nursing home properties and the Jeep Cherokee which the chancellor together valued at $65,000. Gloria was also ordered to assume marital debt of $90,590.49.
¶ 9. Gene received net assets valued at approximately $260,147.98.[1] This included the three-quarter interest in the Lowndes *397 County property and its contents, one of the personal care home properties, the property used as an office, a 1988 Jeep Wrangler, two boats, an all-terrain vehicle, proceeds of the sale of the tractor and bush hog, one half of the contents of the lock box, one half of the bank funds withdrawn by Gloria, a truck, gas grill, tools, a bedroom suite, knife collection and his retirement account. Gene was also assigned marital debt of $21,547.81.

ANALYSIS

1. Equitable distribution
¶ 10. Gloria does not make any specific claim or coherent argument for her assertion that the distribution of marital assets was unjust. She appears to be arguing the chancellor erred in the factual findings leading to the division of assets made as described above. Gloria states that the chancellor erred in finding her a healthy woman capable of employment, that due to the surrender of her personal care home license she is incapable of resuming her career, and that failing to allot a portion of Gene's retirement fund was unjust in the extreme.
¶ 11. Mississippi is an equitable distribution state. Owen v. Owen, 798 So.2d 394, 399 (¶ 14) (Miss.2001). The division of marital assets is a matter of discretion for the chancellor, bearing in mind the equities of the circumstances and the relevant facts and considerations. Davis v. Davis, 638 So.2d 1288, 1293 (Miss.1994). The factors that must be considered, the Ferguson factors, are familiar and well-known to the courts of this State. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss. 1994).
¶ 12. The chancellor did address and make findings of fact for each of these points in making the distribution of marital assets and we find no abuse of discretion in those findings. The testimony and financial records submitted by the parties support them. It was found that Gloria had disposed of marital assets but the contents of the marital home had greater sentimental value for her than they did for Gene. Both parties were found to be in good health with the capacity to earn a living.
¶ 13. Gloria submitted no evidence of ill-health other than a single statement during her testimony. As of the date of trial, she is a licensed registered nurse with the ability to earn a living even had she not been given the majority of the marital assets. The chancellor noted that he included Gene's accrued pension as marital property but awarded it to him in full. Gene is not entitled to receive these funds until he retires. Awarding a portion of it to Gloria would entangle this couple for the foreseeable future, an outcome not in keeping with the goal of finalizing the division of assets and the legal relationship of the parties where possible. Id. at 929. Gloria was awarded the bulk of the marital property and only a small portion of the debt, an indicator the chancellor did consider her substantial contributions to the marriage. We find no error in this distribution.

2. Alimony
¶ 14. Gloria next argues she should have been awarded alimony and failure to do so was unjust. She argues her inability to obtain employment will prevent her from living in the manner to which she is accustomed, her health is poor, Gene's needs and obligations are considerably less than her own and Gene wasted assets throughout the thirty-six marriage.
¶ 15. There are several factors that must be considered in determining the propriety of an alimony award:

*398 (1) the income and expenses of the parties;
(2) the health and earning capacity of the parties;
(3) the needs of each party;
(4) the obligations and assets of each party;
(5) the length of the marriage;
(6) the presence or absence of minor children in the home;
(7) the age of the parties;
(8) the standard of living of the parties;
(9) the tax consequences of spousal support;
(10) fault or misconduct;
(11) wasteful dissipation of assets;
(12) any other factor bearing on justness and equity.
Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 16. Alimony awards are left to the discretion of the chancellor. Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992). We will not disturb the chancellor's decision unless it is against the overwhelming weight of the evidence or manifestly in error. Id. Where the division of marital assets in conjunction with nonmarital assets will adequately provide for a party, alimony need not be awarded. Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994).
¶ 17. The chancellor did not make specific findings of fact in this section of the judgment. However, many of these factors are congruent with the factors to be considered in making an equitable distribution of marital assets and these were thoroughly discussed in that section. When comparing the factors with the facts of the case, the decision not to award alimony is neither against the overwhelming weight of the evidence nor is it manifestly erroneous.
¶ 18. In awarding Gloria more than two-thirds of the marital estate, the chancellor clearly recognized her contributions to the financial well-being of the marriage. The chancellor also noted that Gloria was soon expecting the benefit of an inheritance of approximately $75,000 in cash and property. The great majority of the assets awarded Gloria are unencumbered while most of the property awarded Gene hold mortgages. Gloria has at her disposal over $600,000 in assets with which to support herself. Gene has under half that amount. On these facts we do not find the chancellor's decision erroneous.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF OKTIBBEHA COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] The values assigned are approximate and do not precisely match those cited by the parties in their briefs. The amounts were reached by computation of the values assigned to each piece of property by the chancellor. The amounts are not exact as the value of some items, such as the tools, bedroom set and grill given to Gene, were never recited by the chancellor.