RUSSELL, J.,
concurring in part and dissenting in part:
II24. I agree with the majority’s decision to affirm the chancellor’s division of marital assets and the award of child support for Rebecca. However, I dissent regarding the majority’s decision to affirm the award of alimony to Susan. Additionally, I disagree with assumptions made by the majority regarding the current financial status of the parties, which were not a part of the chancellor’s decision or the appellate record before this Court. I find that the chancellor erred in awarding permanent periodic alimony to Susan because she was not left with a deficit. Therefore, I would reverse the award of permanent periodic alimony because neither party was left with a deficit after the chancellor equitably divided the parties’ property.
¶ 25. “Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record.” Bond v. Bond, 69 So.3d 771, 772 (¶3) (Miss.Ct.App.2011) (quoting Henderson v. Henderson, 757 So.2d 285, 289 (¶ 19) (Miss.2000)). This Court “will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancel *705 lor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Benal v. Benal, 22 So.3d 369, 372 (¶ 4) (Miss.Ct.App.2009) (quoting Chapel v. Chapel, 876 So.2d 290, 292 (¶ 8) (Miss.2004)). “This Court will not disturb a chancellor’s findings regarding the award or amount of alimony unless there is manifest error.” McKissack, 45 So.3d at 718 (¶ 10) (citing Rodriguez v. Rodriguez, 2 So.3d 720, 730 (¶ 26) (Miss.Ct.App.2009)).
¶ 26. In determining whether alimony is appropriate, this Court has stated:
If there are sufficient marital assets which, when equitably divided and considered with each spouse’s nonmarital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party’s nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered.
McKissack, 45 So.3d at 723 (¶ 36) (citing Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994)) (emphasis added). Stated somewhat differently:
One of the goals of equitable distribution is to alleviate the need for alimony. [Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994) ]. Accordingly, alimony should be considered only after the equitable division of marital property. See Marsh v. Marsh, 868 So.2d 394, 398 (¶ 16) (Miss.Ct.App.2004). “[T]he purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life.” Holley v. Holley, 892 So.2d 183, 185 (¶ 7) (Miss.2004). Generally, permanent alimony should be considered if one spouse is left with a deficit after the division of marital assets. See Kilpa-trick v. Kilpatrick, 732 So.2d 876, 880 (¶ 16) (Miss.1999) (citing Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994)).
Elliott v. Elliott, 11 So.3d 784, 786 (¶ 8) (Miss.Ct.App.2009) (emphasis added). See also Williamson v. Williamson, 81 So.3d 262, 267 (¶ 14) (Miss.Ct.App.2012) (noting that “[ajlimony is considered only after the marital property has been equitably divided and the chancellor determines one spouse has suffered a deficit”).
¶ 27. In determining “the amount of permanent alimony, the chancellor must consider twelve factors identified in Armstrong.” Elliott, 11 So.3d at 786 (¶ 7) (quoting Curtis v. Curtis, 796 So.2d 1044, 1051 (¶ 33) (Miss.Ct.App.2001)). Those factors are:
(1) The income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
Pittman v. Pittman, 791 So.2d 857, 869 (¶ 48) (Miss.Ct.App.2001) (quoting Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993)).
¶ 28. In the instant case, the chancellor performed an Armstrong analysis and awarded Susan permanent periodic alimo *706 ny in the amount of $500 per month commencing on the first day of the month immediately following the month Rebecca’s child support ceases. The chancellor found that Susan’s adjusted gross monthly income was $2,480.62, and her monthly expenses were $3,218. The chancellor also found that Frank’s adjusted gross monthly income was $5,899, and his monthly expenses were $4,060.75 plus child support of $825.00 for a total of $4,885.75. Both parties appeared to be in good physical health and could continue working. As to the needs of each party, the chancellor found that Frank had sufficient funds to meet his financial needs, while Susan had reasonable monthly expenses that exceeded her wages. The chancellor noted that the parties had been married twenty-five years, that Susan was forty-five years of age, and that Frank was forty-one years of age. As to the obligations-and-assets factor, the chancellor awarded Susan $172,421.00 in marital assets and ordered Susan to pay $47,946.00 of the marital debt. The chancellor awarded Frank $126,989.91 of the marital assets and ordered him to pay $77,018.26 of the marital debt. The chancellor noted that Susan would have custody of the parties’ two minor twins, who were nineteen years of age. The chancellor found that the parties maintained a middle income standard of living during their marriage, that Frank would be able to maintain his standard of living, and that Susan would not be able to maintain her standard of living without financial support from Frank. In awarding permanent periodic alimony, the chancellor noted that Susan would be required to pay taxes on any money she received from Frank in alimony, and Frank would receive a tax credit for any money he paid to Susan in alimony. As to the fault-or-misconduct factor, the chancellor granted Susan a divorce on the ground of Frank’s adultery. The chancellor further found that Frank wastefully dissipated $7,165.91 in marital assets. Finally, the chancellor noted that the assets awarded to Susan were not of a liquid nature and she would need financial support from Frank to maintain herself.
¶ 29. In this case, there are several manifest errors. First, the chancellor erred in finding Susan did not have any liquid assets. Susan was awarded $26,943 cash from Frank, and she was also awarded $20,868 from her 401K account. Susan’s liquid assets greatly exceeded the $4,480 of liquid assets awarded to Frank.
¶ 30. Second, the chancellor erred in assessing Frank’s assets at $126,989.91. Frank was credited with an estimated $26,944 as an asset from the remainder of the Thrift Savings account; however, the chancellor failed to take into account that she ordered Frank to pay all penalties and taxes associated with his early withdrawal of a total of $111,227.26, which consisted of $84,284.26 (to pay off the mortgage) and $26,944 (to pay Susan). Therefore, some portion — if not all of the $26,944 — would have been used to pay the taxes and penalties. As such, Franks assets would have been less than $126,989.91.
¶ 31. Finally — and most importantly — I find that the chancellor and the majority, while arriving at different figures than the chancellor, erred in calculating Susan’s monthly expenses. Susan’s Uniform Chancery Court Rule 8.05 financial statement reflects that her expenses totaled $3,218.03 per month; however, this amount included a monthly mortgage payment of $762. Because the chancellor ordered Frank to pay off the mortgage, Susan’s monthly expenses are only $2,456.03. Further, because her monthly income is $2,480.62 before her receipt of the $825 in child support, Susan will not be left with a deficit. See Williamson, 81 So.3d at 271 (¶ 21) (noting that “[a]n award of alimony should only be consid *707 ered if one party will suffer a deficit after the marital property has been equitably divided”). Susan was not left with a deficit and therefore is not entitled to alimony. I find that the chancellor’s award of permanent periodic alimony was manifest error. Therefore, I would reverse and render the chancellor’s award of permanent periodic alimony to Susan.
LEE, C.J., AND IRVING, P.J., JOIN THIS OPINION.