JAMES, J.,
for the Court:
¶ 1. Samuel Keith McMinn, hereinafter Keith, seeks to challenge the decision of the Oktibbeha County Chancery Court in the modification of the final divorce decree against his ex-wife, Sharon McMinn. The trial court originally awarded alimony to Sharon in the amount of $1,000 per month. Keith filed a motion to reconsider, and the trial court granted the motion in part by modifying the alimony award from $1,000 to $750 per month. Keith then filed a complaint to modify the final judgment. In the modification, custody was transferred to Keith, and the trial court ordered Sharon to pay $332 per month in child support for their minor child, Caleb McMinn. Keith raises the following issues on appeal: (1) whether the trial court erred by not ordering back child support and other educational and medical support, (2) whether the trial court erred by not considering Sharon’s personal net worth and neglecting to make on-the-record findings of fact and conclusions of law about the net worth of both parties, and (3) whether the trial court erred when it did not terminate the alimony award.[1] Finding no error, we affirm.
FACTS
¶ 2. The original divorce trial between Keith and Sharon occurred on October 21, 2010. Keith filed a motion to reconsider; however, the trial court did not rule on it before the final judgment of divorce was filed on September 12, 2011. Sharon was awarded custody of their minor son, Caleb. In the equitable distribution of assets, Keith was awarded the marital residence and was responsible for paying the loan on the property. Keith was also ordered to pay $100,000 to Sharon, child support in the amount of $543 per month, and permanent alimony of $1,000 per month. Keith then resubmitted his motion to reconsider, and the trial court entered an order on *514 January 18, 2012, adjusting the amount of Sharon’s alimony award from $1,000 to $750 per month. The trial court did not alter the judgment further.
¶ 3. Keith then filed a complaint for modification of the final judgment. In the complaint, Keith asked for custody to be transferred to him, that Caleb’s college costs be split equally between them, and for the termination of Sharon’s alimony, alleging that Sharon had begun dating and was living with a man, George Rooks. On September 19, 2012, the trial for the modification took place. At trial, Sharon and Rooks admitted to having 'a relationship, which began in 2011; however, they both denied that Sharon received financial support from him. Sharon also admitted to staying overnight at Rooks’s house, vacationing with Rooks and his family, and sharing the expenses for meals while on trips and the occasional dinner at Rooks’s house. However, Sharon kept a separate residence and paid her own bills. Keith argued that Sharon and Rooks were living together or were in a de facto marriage. Further, Keith testified that he observed Sharon’s car at Rooks’s home five or six times a week.
¶ 4. The trial court issued an order on December 7, 2012, on the complaint for modification. In the judgment, the trial court ordered that the physical custody of Caleb be changed from Sharon to Keith. The court noted that Keith stopped paying child support when Caleb came to live with him in June 2011. Keith accrued arrear-ages that totaled $9,774. Because Caleb moved in with Keith, he was eligible for credit on arrearages that accrued from June 2011 to the date of the judgment, and the ongoing child support of $543 per month was terminated. Sharon was ordered to pay $332 per month in child support until Caleb reached twenty-one years of age or further order of the court. The trial court denied Keith’s request to terminate alimony. The trial court admonished both parties to comply with the court’s order and not to act unilaterally from that point forward. All of the other elements of the final judgment remained intact.
¶ 5. Keith filed a motion entitled “motion for new trial or[,] in [the] alternative[,][to] reopen for clarification of evidence and motion for reconsideration,” on December 17, 2012. Keith argued that the relationship between Sharon and Rooks was a de facto marriage and alimony should be terminated. In the judgment dated December 26, 2012, the court denied the motion and held that a “mere re-argument of the evidence, and its application to the ultimate decision, is not a proper basis for granting of such a motion [ (motion to reconsider) ].”
¶ 6. Keith appeals.
STANDARD OF REVIEW
¶ 7. The standard of review in domestic-relations cases is limited. Jackson v. Jackson, 114 So.3d 768, 773 (¶ 10) (Miss.Ct.App.2013). “Consequently, an appellate court will not disturb the chancery court’s findings unless such findings are manifestly wrong or clearly erroneous, or the court applied the wrong legal standard.” Id. Also, “[w]e will not reverse the chancellor’s factual findings where there is substantial evidence in the record supporting those findings of fact.” Henrichs v. Henrichs, 32 So.3d 1202, 1205 (¶ 8) (Miss.Ct.App.2009).
¶ 8. Further, the chancellor has broad discretion in alimony cases. Byars v. Byars, 850 So.2d 147, 148 (¶ 3) (Miss.Ct.App.2003). We will not reverse a chancellor’s decision unless he was manifestly in error or abused his discretion. Id. “Appellate courts need only to determine if the *515 chancellor’s decision was supported by credible evidence.” Id.
DISCUSSION
I. Whether the trial court erred by not ordering Sharon to pay back child support and other educational and medical support.
¶ 9. Keith argues the trial court erred by not awarding back child support to Keith. According to Keith, the trial court gave Sharon an eighteen-month “free ride” in regard to child support and other medical and educational support from June 2011 to January 2013.
¶ 10. In order to obtain a child-support modification, “there must be a substantial and material change in the circumstances in one of the interested parties arising subsequent to the entry of the decree sought to be modified.” Weeks v. Weeks, 29 So.3d 80, 88 (¶ 37) (Miss.Ct.App.2009). The courts use the following elements to determine if a material change has occurred:
(1) increased needs of older children; (2) an increase in expenses; (3) inflation; (4) a child’s health and special medical or psychological needs; (5) the parties’ relative financial condition and earning capacity; (6) the health and special needs of the parents; (7) the payor’s necessary living expenses; (8) each party’s tax liability; (9) one party’s free use of a residence, furnishings, or automobile; and (10) any other relevant facts and circumstances.

Id.

¶ 11. When a modification of child support is filed, the party responsible for paying child support is still liable for any support payments that vest during the course of litigation for the modification. Evans v. Evans, 75 So.3d 1083, 1093 (¶ 41) (Miss.Ct.App.2011). Child-support payments vest as they accrue. Tanner v. Roland, 598 So.2d 783, 786 (Miss.1992). Once support payments have vested, they cannot be modified or forgiven by the courts. Id. When a payment becomes due and remains unpaid, it becomes a judgment against the supporting parent. Howard v. Howard, 968 So.2d 961, 977 (¶ 41) (Miss.Ct.App.2007). “Any modification granted will take effect on the date of the judgment granting the modification.” Id.
¶ 12. The trial court found that there was a change of custody in June 2011. In September 2011, the final judgment of divorce was entered, and Keith resubmitted his motion to reconsider. The motion was essentially identical to the prior motion to reconsider that was filed before the final judgment was entered. In fact, the motion to reconsider was filed on February 16, 2012, approximately eight months after the change in custody took place.
¶ 13. This Court has stated:
[A] father may receive credit for having paid child support where, in fact, he paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the mother. This principle applies, however, only where the father proves by a preponderance of the evidence that he has, in fact, paid the support to the child under circumstances where the support money was used for the child for the purposes contemplated by the support order, that is, to provide shelter, food, clothing, and other necessities for the child.
Holliday v. Stockman, 969 So.2d 136, 138-39 (¶ 7) (Miss.Ct.App.2007) (internal citations omitted). Further, “[e]quity and good conscience forbid a windfall to a parent that did not object to a custody change and in fact simply because the other parent did not notify the court of the change either.” Alexander v. Alexander, 494 So.2d 365, 368 (Miss.1986).
¶ 14. The trial court gave. Keith credit for the arrearage that accrued from June *516 2011 to the date of the judgment in December 2012 in the amount of $9,774. The court cited Varner v. Varner, 588 So.2d 428 (Miss.1991), and Alexander, 494 So.2d 365, stating that “[a] non-custodial parent is entitled to credit on arrearages accrued while there has been a change in custody. To do so otherwise would enrich the custodial parent.” The trial court also ordered Sharon to pay child support in the amount of $332 each month. As noted earlier, modification of a judgment is in effect the date of the modification. Howard, 968 So.2d at 977 (¶ 41). For almost eighteen months, no judgment was in place that ordered Sharon to pay Keith child support. Keith was under a court order to pay Sharon when Caleb came to live with him.
¶ 15. In regard to the medical and educational support, the trial court found that both parties had not paid their share of the medical and educational expenses and chose to admonish them and encourage both parties to pay in the future. We find no error with the trial court’s reasoning and judgment.
II. Whether the trial court erred by not considering Sharon’s personal net worth and neglecting to make on-the-record findings of fact and conclusions of law about the net worth of both parties.
¶ 16. Keith argues that the trial court did not allow him to fully determine the value of Sharon’s assets at the time of trial. Keith contends that the value of Sharon’s estate exceeded the value of Keith’s estate. Keith submits that Sharon’s circumstances changed and the court failed to take those changes into consideration. Keith also argues that the trial court should have made on-the-record findings of fact and conclusions of law. Keith further asserts that the trial court’s failure to make on-the-record findings in regard to its ruling on alimony is reversible error.
¶ 17. In Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), the Mississippi Supreme Court set out the factors to be considered when determining alimony:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or ■
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
¶ 18. Alimony may be modified if there has been a material change of circumstances. Magee v. Magee, 754 So.2d 1275, 1278 (¶8) (Miss.Ct.App.1999). “The change must occur as a result of after-arising circumstances of the parties not reasonably anticipated at the time of the agreement.” Id. “Circumstantial changes occurring within a short time from the original decree are changes which may be reasonably anticipated and do not therefore justify modification.” Id.
*517 ¶ 19. In the final judgment of divorce, Keith was ordered to pay $100,000 to Sharon in the trial court’s determination of equitable division. It was at this time alimony was awarded to Sharon. The $100,000 payment made from Keith to Sharon was reasonably foreseeable since it was provided for in the final judgment of divorce.
¶ 20. It is true, however, that if a recipient spouse has increased resources, this Court has held that a downward modification of alimony is not an abuse of discretion. Tillman v. Tillman, 809 So.2d 767, 770-71 (¶ 9) (Miss.Ct.App.2002). Although Sharon will inherit from her mother’s estate, the amount she expects to inherit is unclear. At this time, it would be improper to speculate as to what, if anything, Sharon will inherit from her mother. As a result, there is not sufficient evidence of a material change of circumstances to support a modification of alimony.
¶21. Further, it should also be noted that we have affirmed cases where specific findings of fact in regard to alimony were not made by the chancellor. E.g., Marsh v. Marsh, 868 So.2d 394, 398 (¶ 17) (Miss.Ct.App.2004). In that case, we stated “[t]he chancellor did not make specific findings of fact in this section of the judgment. However, many of these factors are congruent with the factors to be considered in making an equitable distribution of marital assets.” Id. Accordingly, this issue is also without merit.
III. Whether the trial court erred when it did not terminate Sharon’s alimony.
¶ 22. Keith argues that Sharon was receiving financial benefits from her then-boyfriend, Rooks. According to Keith, Sharon and Rooks entered into a de facto marriage and lived together from June 2011 to June 2012. Keith asserts that as a result of Sharon and Rooks’s cohabitation, alimony should be terminated.
¶ 23. Alimony may be terminated if the recipient spouse has entered cohabitation or a de facto marriage. Wallace v. Wallace, 12 So.3d 572, 575 (¶ 14) (Miss.Ct.App.2009). “[P]roof of cohabitation creates a presumption that a material change in circumstances has occurred.” Id. “Modification of alimony may occur upon the existence of a situation of mutual support between the recipient spouse and another individual which alters the recipient spouse’s financial needs.” Schanuath v. Schanuath, 702 So.2d 1210, 1211 (¶ 6) (Miss.1997). In Byars, this Court held that evidence of a sexual relationship between the recipient spouse with another is not enough to terminate alimony. Byars, 850 So.2d at 149 (¶ 5). However, alimony may be terminated if a payee purposefully avoids marriage to continue receipt of alimony payments. Pritchard v. Pritchard, 99 So.3d 1174, 1179 (¶ 24) (Miss.Ct.App.2012).
¶24. “There is indeed a general presumption that, where there is cohabitation, there is also mutual support.” Coggins v. Coggins, 132 So.3d 636, 643 (V 27) (Miss.Ct.App.2014). We have previously stated:
This presumption is based on two considerations. One is the difficulty a providing spouse faces in presenting direct evidence of mutual financial support between cohabiting parties. And the second consideration stems from the notion that parties who live in cohabitation can easily and purposely keep their condition of mutual financial support concealed from the paying spouse as well as from courts seeking only financial documentation before granting a modification.

Id.

¶25. The recipient spouse has the burden of proving that there is no *518 mutual support. Alexis v. Tarver, 879 So.2d 1078, 1080 (¶ 8) (Miss.Ct.App.2004). If the recipient spouse proves no support existed, then it is possible that the alimony payments can continue. Id.
¶ 26. At trial, it was established that Sharon had a sexual relationship with Rooks, regularly stayed overnight weekends and several days during the week, and went on vacations with him and his family. Sharon and Rooks testified that Sharon did not receive any financial-.help from him to pay her bills or contribute to her everyday expenses. Sharon also maintained a separate residence and stated that she and Rooks had no plans to marry. Keith testified that he observed Sharon’s car at Rooks’s house several times a week. The trial court stated that “[a] relationship accompanied by sexual activity, alone, does not rise to the level necessary to forfeit alimony.” - In his brief, Keith enumerates’ certain behaviors such as overnight trips, Sharon’s visits to Rooks’s home, and gift exchanges. The course of conduct described, however, is similar to a normal, casual dating relationship.
¶ 27. “The chancellor’s findings of fact about cohabitation, de facto marriage, and mutual support are entitled to substantial- deference when reviewed on appeal.” Coggins,. 132 So.3d at 643 (¶ 29). The chancellor, as the trier of fact, found that alimony was properly awarded to Sharon. There is nothing in the record to indicate that the chancellor’s findings were manifestly wrong- or there was an abuse of discretion. Accordingly, this issue is without merit.
CONCLUSION
¶ 28. There is substantial evidence to support the chancellor’s findings. The trial court was not manifestly wrong or clearly erroneous, nor did the court apply the wrong' legal standard. Keith is not entitled to back child support for the year Caleb lived with him. His relief took the form of the credit that the court applied to the arrearage at the time of trial. The trial court also properly considered the net worth of both Keith’s and Sharon’s estates. Further, the trial court did not err when it found that Rooks and Sharon had a casual dating relationship and had not cohabited or entered a de facto marriage. Accordingly, we affirm the judgment of the trial court.
¶ 29. -THE JUDGMENT OF THE CHANCERY COURT OF OKTIBBEHA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. Keith, originally raised four issues; however, in the interests of simplicity and clarity, issues three and four will be discussed together.