FAIR, J.,
for the Court:
¶ 1. After almost eleven years of marriage, Arthur and Marketa Mamiaro separated on' April TO, 2011. Four months later, Arthur filed for divorce in DeSoto County Chancery Court. After a day of trial on July 23, 2013, the chancellor distributed the couple’s marital property in equal portions and awarded Marketa permanent .alimony. On appeal, Arthur argues the following: (1) the chancellor erred in his determination of the marital estate by failing to classify as marital property a $1,000 savings account maintained by Marketa; and (2) the chancellor erred in awarding Marketa permanent alimony. Finding the chancellor acted within his discretion, we affirm.
FACTS
¶ 2. The chancellor granted the parties an irreconcilable -'differences divorce and provided for joint legal and physical custody of their two children, ordering Arthur to pay Marketa $767 a month in child support.
¶3. The ■ chancellor then determined that the total value of the couple’s marital estate amounted to $150,639. The chancellor did not classify Marketa’s separate' savings account maintained by Marketa as *53 marital property, since Arthur and Marke-ta had maintained separate accounts since the divorce filing.
¶4. -The chancellor’s division of the marital property between the parties was essentially even. Turning to the issue of alimony, he found that Arthur worked for Jabil Circuit Inc. in a management capacity and, after allowable expenses, earned a monthly net income of $6,421.62. The chancellor also found that Marketa had spent ten years as a stay-at-home mother but had worked for the past two years as a personal trainer at the DeSoto Athletic Club. After allowable expenses, the-chancellor calculated Marketa’s earned monthly net income-to be $2,585. He then found that, due to the difference in the parties’ monthly incomes, the distribution left Mai’keta with a deficit in income of close to $4,000 a month. The chancellor then turned to an analysis of the Armstrong[1] factors to determine-whether he should award Marketa alimony. Considering the Armstrong factors under the totality of the circumstances, the chancellor found that a need for alimony existed, and ordered Arthur to pay Marketa $725 a month in permanent alimony. .The chancellor also ordered the parties to pay their own attorney’s fees since they possessed the assets to do so and had failed to show an inability to pay. -
STANDARD OR REVIEW
¶5. “When [an appellate court] reviews a chancellor’s decision in a ease involving divorce and all related issues, [the court’s] scope of review is limited by the substantial evidence/manifest error rule.” Yelverton v. Yelverton, 961 So.2d 19, 24 (¶ 6) (Miss.2007). Therefore, this Court will not disturb the chancellor’s findings “unless the chancellor was manifestly wrong [or] clearly erroneous[,] or a clearly erroneous standard was applied.” Id. (citation omitted).
DISCUSSION
1. Marketa’s Savings Account
¶ 6. To equitably divide property, the chancellor must: (1) Classify the parties’ assets as marital or separate, (2) value those assets, and (3) equitably divide the marital assets. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994); Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). Here, Arthur argues that the chancellor erred his determination of the property by excluding funds held in Marketa’s savings account.
¶ 7. In Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994), our supreme court stated that all marital assets are subject to possible equitable distribution in accordance with the factors provided in Ferguson. Marital property is “ány and all property acquired or accumulated during the marriage ... and [is] subject to an equitable distribution by the chancellor.” Hemsley, 639 So.2d at 915. Further, such marital “[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties’ separate estates prior to the marriage or outside of the marriage.” Id. at 914. We review a chancellor’s equitable division under the familiar manifest-error standard of review. Vaughn v. Vcuughn, 56 So.3d 1283, 1288 (¶ 17). (Miss.Ct.App.2011).
¶ 8. Arthur argues that the chancellor erred in his classification and division of marital property. - He claims that, since the chancellor classified his investment-account funds he withdrew during the parties’ separation - as marital property, the *54 chancellor should have likewise considered Marketa’s savings account as marital property.
¶ 9. Arthur testified at the hearing that, prior to filing for divorce, he withdrew about $30,000 from an investment account. According to his testimony, Arthur used $20,000 of the withdrawn funds as a retainer for his attorney, he used some of the money to hire a private investigator, and he used the remainder of the money to take his children on several trips. The chancellor found that Arthur withdrew $38,400 from the marital assets and that Marketa would have otherwise been entitled to fifty percent of the .funds. The chancellor therefore ordered Arthur to reimburse Marketa for half of the withdrawn funds.
¶ 10. Arthur also testified that he opened a savings account around the time he filed for divorce. On the day of the hearing, the account balance was $224.52. He also testified that he opened a checking account after filing for divorce. The checking account amounted to $2,000 on the day of the hearing.
¶ 11. Marketa testified that she, too, maintained a savings account after Arthur filed for divorce. She stated that, over the past two years, the maximum balance of the account was $5,000, following the filing of her 2012 separate tax return. She further testified that the account contained $2,500 before the hearing. After paying her attorney’s fees that morning, the account balance dropped to $1,000. At the close of the hearing, the chancellor denied Marketa’s request for attorney’s fees because she failed to show an inability to pay, presumably since she could use her savings account to pay her attorney’s fees. The chancellor did not address Marketa’s savings account in his division of marital property.
¶ 12. The chancellor properly recognized Arthur’s investment funds, withdrawn prior to separation, as marital property. In regard to Arthur’s and Marketa’s checking and savings accounts, the chancellor acknowledged that they maintained separate accounts after Arthur filed for divorce. The record reflects that Arthur had around $2,000 in checking and $224 in savings, while Marketa had around $250 in checking and $1,000 in savings. The chancellor did not classify any of those accounts as marital property. For that reason, we cannot find that the chancellor committed manifest error in classifying Marketa’s savings account as nonmarital property.
2. Permanent Alimony
¶ 13. The chancellor has broad discretion in alimony cases. Byars v. Byars, 850 So.2d 147, 148 (¶ 3) (Miss.Ct.App.2003). We will not reverse a chancellor’s decision unless he committed manifest error or abused his discretion. Id. “Appellate courts need only to determine if the chancellor’s decision was supported by credible evidence.” Id. “The purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life.” Elliott v. Elliott, 11 So.3d 784, 786 (¶ 8) (Miss.Ct.App.2009). Therefore, “permanent alimony should be considered if one spouse is left with a deficit after the division of marital assets.” Id.
¶ 14. Arthur argues that this Court should reverse the award of permanent alimony because the chancellor’s finding that Marketa was left with a deficit was not supported by the record and that he erred in his analysis of the Armstrong factors.
¶ 15. The chancellor evenly distributed the parties’ marital estate, noting in his findings that a gross disparity exist *55 ed between the parties’ monthly incomes and that the property division left Marketa with a deficiency. He discussed in detail the Armstrong factors, which are: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home; (7) the age of the parties; (8) the standard of living of the parties; (9) the tax consequences of the support decree; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; and (12) any other factor deemed to be fair and equitable. Armstrong, 618 So.2d at 1280. Ultimately, the chancellor determined that Marketa would need $725 a month in alimony to account for the deficit between her income and expenses.
¶ 16. Arthur contests Marketa’s alimony award chiefly due to income Marketa may have earned boxing. Marketa claimed on her financial statement that she earned a monthly income of $3,218 as a personal trainer and that, after allowable deductions, her monthly take-home pay amounted to $2,585.06. Marketa testified on cross-examination that she had received some income from boxing, though she was never asked how much. She said it “should” be included in her Uniform Chancery Court Rule 8.05 disclosures. She could have meant that it was omitted, or she could have meant that it was already included. Arthur’s attorney did not question her further about this income. Although no specific reference to boxing income appears on her 8.05 statement, Marketa’s income as an exercise instructor was paid in irregular amounts based on irregular hours spent in that activity, and this was broken down in some detail. Marketa attached copies of the checks detailing that income. Her boxing income could have been included there; it is just not clear from the record. Marketa was never actually asked how much income she earned boxing, nor did she ever clearly state that it was not included in her 8.05 disclosure.
¶ 17. The record reflects a marriage of eleven years, with Marketa staying at home to take care of the two children. For the last two years before trial in July 2013, she had worked as a personal trainer, but she was earning only a little more than a third of what her husband made. The property division was essentially equal and cannot be said to have made up for the $4,000-per-month income disparity between the parties. See Armstrong, 618 So.2d at 1280; Gray v. Gray, 562 So.2d 79, 83 (Miss.1990); Box v. Box, 622 So.2d 284, 288 (Miss.1993).
¶ 18. For the first Armstrong factor, the chancellor determined that Marketa’s income was significantly less than Arthur’s income and ruled in favor of Marketa. As to health and earning capacity, the chancellor recognized Marketa had only recently entered into the workforce. The chancellor also found the length of marriage favored Marketa. For the standard of living, the chancellor ruled in favor of Marketa, stating that she had grown “accustomed to staying at home, taking care of the children, not working, and being fully supported!)]” The court found the following Armstrong factors as neutral: needs of each party, obligations and assets, presence or absence of minor children, age of the parties, fault or misconduct, and wasteful dissipation of assets.
¶ 19. Given the evidence before him, and in light of his discussion of his evaluation of the evidence under the Armstrong factors, we find the chancellor acted within his discretion in awarding $725 per month in permanent alimony to Marketa.
*56 ¶ 20. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED, ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., BARNES, ISHEE, MAXWELL AND JAMES, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED' BY LEE, C.J., AND IRVING, P.J. .WILSON, J., NOT PARTICIPATING.

. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).