GRIFFIS, P.J.,
for the Court:
¶ 1. Russell Gary O’Brien appeals the chancellor’s judgment of divorce. He argues that the decree “reads like a honky tonk chorus,” and he refers to Jerry Reed’s hit song “She Got The Goldmine (I Got The Shaft).” We affirm in part and reverse and remand in part.
FACTS
¶ 2. Russell and Teri Suzanne O’Brien were married on January 2, 2002, and separated in October 2010. Russell and Teri both had children from prior marriages, who are now adults.
¶ 3. On February 2, 2011, Teri filed for divorce on the grounds of adultery, habitual cruel and inhuman treatment, and in the alternative, irreconcilable differences. Russell answered and filed a counterclaim for divorce on the ground of habitual cruel and inhuman treatment. The chancellor entered a temporary order on child custody, child support, spousal support, payment of bills and medical expenses, and homestead rights.
¶ 4. Russell and Teri agreed to withdraw their fault grounds and proceed with an irreconcilable-differences divorce. They submitted certain issues for the chancellor to decide. The trial was held in March 2012.
¶ 5. Russell testified that he worked as a welder. In his 2011 tax return, Russell’s adjusted gross income was $121,483 (his gross income was reduced by $4,500 for alimony paid), and his taxable income was $68,814. He also testified that he had been unemployed but recently began work in the pipeline business.
*512 ¶ 6. Teri testified that she was a high-school graduate who completed one semester of studies in electronics. She worked off and on during the marriage as a pharmacy technician, medical assistant, substitute teacher, and part-time cashier. At the time of the trial, she was working at Fred’s pharmacy and as a part-time tutor at the Lamar County Schools. She testified that her gross income was $1,567.91 per month, and she received $1,900 per month from Russell, pursuant to the temporary support order.
¶ 7. In the final judgment, the chancellor granted a divorce on the ground of irreconcilable differences. The chancellor also adopted Russell and Teri’s agreement on the issues of child custody and visitation; Teri and Russell would share joint legal custody of their minor child, Teri would have physical custody, and Russell would be allowed reasonable visitation based on his uncertain work schedule. The judgment divided the marital property and debt, it awarded Teri periodic alimony in the amount of $600 per month, and it awarded Teri child support of $900 per month. The chancellor also made other awards that are not contested here. It is from this judgment that Russell now appeals.
STANDARD OF REVIEW
¶ 8. In domestic-relations cases, normally, this Court “will not disturb a chancellor’s judgment when it is supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal standard[.]” Rolison v. Rolison, 105 So.3d 1136, 1137 (¶ 4) (Miss.Ct.App.2012) (citations and quotations omitted). “If the chancellor’s findings are supported by substantial evidence, then we will affirm.” Id. (citation omitted). Questions of law, however, are reviewed de novo. Price v. Price, 22 So.3d 331, 332 (¶ 8) (Miss.Ct.App. 2009).
ANALYSIS

1. Whether the chancellor erred in finding Russell in contempt for violating the temporary support order.

¶ 9. Russell argues that it was error to find him in contempt for violating the temporary support order. Russell claims that the chancellor did not rule on his motion for relief from the temporary support order before the final divorce decree was entered.
¶ 10. Mississippi Code Annotated section 93-5-17(2) (Rev.2013) provides that a chancellor may “hear complaints for temporary alimony, temporary custody of children and temporary child support and make all proper orders and judgments thereon.” Further, this Court may allow retroactive awards of temporary support even after a divorce judgment is entered. Strong v. Strong, 981 So.2d 1052, 1055 (¶ 15) (Miss.Ct.App.2008). Temporary support ends when a final judgment is entered. Bond v. Bond, 355 So.2d 672, 674-675 (Miss.1978). However, a payor still has a duty to pay past-due temporary support, as a final decree of divorce does not preclude a chancellor from entering a judgment for arrearages of temporary support without having to express the right to enforce the judgment in the final divorce decree. Lewis v. Lewis, 586 So.2d 740, 742 (Miss.1991).
¶ 11. The chancellor determined that Russell owed Teri the sum of $7,439.05, which was the arrearage of the temporary support order. The chancellor also determined that Russell was not in wilful contempt, and Russell was ordered to pay the $7,439.05 arrearage in payments of $200 per month. We find that the chancellor *513 was within his discretion when he found Russell in contempt for violating the temporary support order. Russell admitted in his testimony that he did not pay the credit-card debts, child support, or medical costs not covered by insurance as mandated in the temporary support order. Apparently, the chancellor considered Russell’s unemployment as a basis to not hold him in wilful contempt and to permit the arrearage to be paid in monthly installments. As to this issue, we find no merit to Russell’s claims. We affirm the chancellor’s finding on contempt.

2. Whether the chancellor erred in the award of child support.

¶ 12. Mississippi Code Annotated section 43-19-101(4) (Rev.2009) provides that “[i]n cases in which the adjusted gross income ... is more than Fifty Thousand Dollars ($50,000.00) ... the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.” (Emphasis added). Here, the chancellor determined Russell’s income to be $68,000 per year and awarded child support in the amount of $900 per month. Russell argues that it was reversible error for the chancellor to fail to make written findings as to the application of the child-support guidelines.
¶ 13. Teri concedes that the chancellor made no written findings to justify the child-support award. However, Teri argues that the award should be affirmed because Russell failed to accurately disclose his financial information.
¶ 14. This Court was confronted with a similar issue in Peters v. Peters, 906 So.2d 64, 71 (¶ 32) (Miss.Ct.App.2004). In Peters, an award of child support was- affirmed when this Court found that the appellant was in no position to complain about possible inaccuracies in the income amount used by the chancellor to calculate the child-support award, as those inaccuracies were due to the appellant’s lack of candor in disclosing his financial condition. Id. (citing Dunn v. Dunn, 695 So.2d 1152, 1156-57 (Miss.1997)).
¶ 15. We begin with Mississippi Code Annotated section 43-19-101(4), which requires the chancellor to “make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.” Here, the chancellor made the following findings as to child support:
[T]he court is not certain what Mr. O’Brien’s exact take-home pay is. The court — at one point he testified or produced evidence showing that — maybe on his income tax return that his income may be $68,000 per year. Mrs. O’Brien through her attorney sought to say that most of those deductions were paper deductions; that Mr. O’Brien had some control over how his taxable income is reduced, depending upon the information that he chose to give to his tax preparer. The court does look at those and take them into consideration.
The court determines the child support award will be $900 per month.
¶ 16. The record here includes Russell’s 2011 tax return. His adjusted gross income was $121,483 (his gross income was reduced by $4,500 for alimony paid), and his taxable income was $68,814 (reduced by $35,654 in job-related itemized deductions). Although it appears that the $68,000 comes from Russell’s net income, after expenses, not just his adjusted gross income, this is the exact situation where this Court needs the chancellor to make a written finding as to the amount of income upon which the award of child support was based and the reason that the amount awarded is reasonable. For example, if the chancellor used $68,000 as the amount *514 of income and applied the statutory percentage (fourteen percent),[1] the monthly child support would be $793. To arrive at $900 per month, we would have to assume the chancellor used an approximate income of $77,000 multiplied by the statutory amount.
¶ 17. We find that the chancellor’s statement was not enough to satisfy the requirements of section 43-19-101(4). To be sufficient, the chancellor should disclose the basis for the calculations. This would require the chancellor to state whether the award was based on the statutory child-support guidelines (section 43-19-101(1)) and discuss the reasonableness of the award. Therefore, we reverse the chancellor’s award of child support and remand for further proceedings consistent with this opinion.

3. Whether the chancellor erred in determining the alimony award based on the consideration of fault.

¶ 18. Russell next argues that it was reversible error for the chancellor to allow evidence of fault to be admitted. He argues that evidence of fault in the dissolution of the marriage was not relevant because the fault grounds of divorce were withdrawn and an irreconcilable-differences divorce was granted.
¶ 19. Teri offered evidence that Russell had been involved in inappropriate relationships on social media and through dating-referral services. Teri also claimed that both she and her son had discovered Facebook solicitations to Russell from a female who displayed suggestive photos. Based on this evidence, the chancellor found that the breakup of the marriage was caused by Russell’s “outside relationships with other women.”
¶ 20. First, to determine alimony, the chancellor must consider the Armstrong factors. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Factor ten is “[f]ault or misconduct.” As a result, evidence of marital fault is relevant evidence when there is a claim of alimony. Second, in Singley v. Singley, 846 So.2d 1004, 1008 (¶ 10) (Miss.2002), the supreme court held “fault should be considered by the chancellor in determining equitable distribution of a marital estate.”
¶ 21. Evidence of marital fault or misconduct is relevant and admissible when the court considers equitable, distribution of property or alimony. Thus, we find no error under this issue.
A Whether the chancellor erred in his division of marital property and award of alimony.
¶ 22. Russell challenges the chancellor’s equitable division of marital assets and the award of alimony. The supreme court has established certain factors for the chancellor to consider in the equitable division of marital assets. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). The factors are:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment *515 bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
¶ 28. In Johnson v. Johnson, 650 So.2d 1281,1287 (Miss.1994), the court outlined the process chancellors are to follow in applying the Ferguson factors. First, the chancellor is to classify the parties’ assets as marital or non-marital based on Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994). Johnson, 650 So.2d at 1287. Second, the chancellor is to value and equitably divide the marital property employing the Ferguson factors as guidelines, in light of each party’s non-marital property. Id. at 1287. Third, if the marital assets, after equitable division and in light of the parties’ non-marital assets, will adequately provide for both parties, then “no more need be done.” Id. Finally, if an equitable division of marital property, considered with each party’s non-marital assets, leaves a deficit for one party, then alimony should be considered. Id.
¶ 24. The supreme court has also established certain factors for the chancellor to consider in the award of alimony. Armstrong, 618 So.2d at 1278. The factors are:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
Id. at 1280.
¶25. Russell argues that the chancellor did not equitably divide the marital property and debt. First, Russell *516 complains that the chancellor considered some but not all of the Ferguson factors. We note that the chancellor is not required to consider all of the Ferguson factors in order to equitably divide the marital estate and may only considers those factors that are applicable. Owen v. Owen, 22 So.3d 386, 388 (¶ 5) (Miss.Ct.App.2009). “Equitable distribution does not mean equal distribution.” Lauro v. Lauro, 924 So.2d 584, 590 (¶ 23) (Miss.Ct.App.2006) (citing Chamblee v. Chamblee, 637 So.2d 850, 863-864 (Miss.1994)). Rather, the chancellor’s equitable distribution of marital assets must be supported by findings of fact and conclusions of law to be upheld by this Court. Id.
¶ 26. Here, the chancellor provided specific findings of fact and conclusions of law as to the Ferguson and Armstrong factors. The chancellor stated the correct specific procedure he was required to follow to divide and distribute • the marital assets. The chancellor did make findings that addressed factors that he found applicable. He also identified specific relevant testimony and other evidence upon which he based his findings. We find there is no merit to the Russell’s contention that the chancellor failed to consider the proper factors.
¶ 27. Next, Russell argues that the division was not equitable. This is where he references the song “She Got The Goldmine (I Got The Shaft).”

A.The House

¶ 28. The chancellor ordered, that Teri would have exclusive use and possession of the marital home. The chancellor valued the home at $93,000, found the debt owed to be $73,000, and concluded the parties had equity of $17,000. The chancellor split the equity in the house, with Russell and Teri each to receive $8,500. The chancellor then gave Teri a judgment against Russell in the amount of $8,500, with interest at the rate of eight percent per annum, to be paid when the home is sold. The chancellor then awarded Teri the exclusive use and benefit of the home until the later of the minor child’s eighteenth birthday or his graduation from high school. At that time, Russell could sell the home and pay the judgment owed Teri for her equity.

B. Teri’s Personal Property

¶ 29. Teri was awarded the Chevrolet Trailblazer (value of $10,370; note of $11,000, equity of $630), riding lawn mower (value of $800), garden tiller (value of $500), and Montana tractor (value of $12,000). She was also awarded some household furnishings. (The total value of all household furnishings was $3,000.)

C. Russell’s Personal Property

¶ 30. Russell was awarded the Dodge truck (value of $55,000; note of $44,000; equity of $11,000), travel trailer (value of $33,000), welding equipment and tools (value of $10,000), and pressure washer (value of $300). He was also awarded some household furnishings.

D. Debts

¶ 31. The chancellor determined Russell was responsible for the debts incurred from eight credit cards; the mortgage;the notes on both vehicles, the travel trailer, and the tractor; and the BancorpSouth loan. The balance owed on the debts assigned to Russell was $110,522.58. Considering the fact that Russell must also pay the home mortgage of $73,000, he was assigned almost $184,000 in marital debt. Teri was ordered to pay two discount-store credit cards. The balance owed on .the debts assigned to Russell was $690.42. The values used here were from Teri’s *517 Rule 8.05 financial statement.[2] Also, as part of this award, the chancellor determined that Russell had paid Teri’s attorney’s fees when he paid one of the credit cards that Teri had used to retain her attorney.
¶ 32. Clearly, the marital or separate assets do not exceed the marital liabilities. Russell argues that the chancellor’s award was not equitable because he was ordered to pay for Teri’s home and car (approximately $1,230 per month), credit-card payments (approximately $2,000 per month), alimony ($600 per month), and child support ($900 per month), for a total monthly obligation of $4,730 per month. Based on his take-home income, Russell claims that the chancellor left him with only $300 per month to pay his living expenses and monthly obligations.
¶ 33. In the determination of child sup-' port, the chancellor only discussed Russell’s annual income of $68,000. In determining the alimony award, the chancellor, stated that it was difficult to determine the exact amount of Russell’s income. Yet the chancellor based his consideration of equitable division and alimony on Russell’s alleged monthly income of $13,000, which would amount to an annual income of $156,000 after taxes. There is no evidence in the record to support a finding that Russell was making $156,000 per year. Further, the conflict between the income figures used for child support and for equitable division and alimony must be corrected.
¶ 34. Therefore, we find the chancellor’s Ferguson and Armstrong analysis regarding Russell’s income and his ability to pay the debt assigned was clearly erroneous. We reverse the chancellor’s judgment in part and remand this issue for further proceedings consistent with this opinion.
¶ 35. THE JUDGMENT OF THE CHANCERY COURT OF LAMAR COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES,, JJ., CONCUR. FAIR, J„ CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Miss.Code Ann. § 43-19-101(1) (Rev.2009).

. UCCR 8.05.