# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-02017-COA

ARTHUR EDWARD MAMIARO, JR.                                                APPELLANT

v.

MARKETA (BLAZKOVA) MAMIARO                                               APPELLEE

DATE OF JUDGMENT:             11/08/2013
TRIAL JUDGE:                  HON. PERCY L. LYNCHARD JR.
COURT FROM WHICH APPEALED:    DESOTO COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:      M. W. ZUMMACH
                              GREGORY C. MORTON
ATTORNEYS FOR APPELLEE:       A. E. (RUSTY) HARLOW JR.
                              KATHI CRESTMAN WILSON
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:      GRANTED DIVORCE, DIVIDED MARITAL
                              PROPERTY, AND AWARDED ALIMONY
                              TO THE APPELLEE
DISPOSITION:                  AFFIRMED: 07/21/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**FAIR, J., FOR THE COURT:**

¶1.     After almost eleven years of marriage, Arthur and Marketa Mamiaro separated on April 10, 2011.  Four months later, Arthur filed for divorce in DeSoto County Chancery Court.  After a day of trial on July 23, 2013, the chancellor distributed the couple's marital property in equal portions and awarded Marketa permanent alimony.  On appeal, Arthur argues the following: (1) the chancellor erred in his determination of the marital estate by failing to classify as marital property a $1,000 savings account maintained by Marketa; and

(2) the chancellor erred in awarding Marketa permanent alimony. Finding the chancellor acted within his discretion, we affirm.

## FACTS

¶2. The chancellor granted the parties an irreconcilable differences divorce and provided for joint legal and physical custody of their two children, ordering Arthur to pay Marketa $767 a month in child support.

¶3. The chancellor then determined that the total value of the couple's marital estate amounted to $150,639. The chancellor did not classify Marketa's separate savings account maintained by Marketa as marital property, since Arthur and Marketa had maintained separate accounts since the divorce filing.

¶4. The chancellor's division of the marital property between the parties was essentially even. Turning to the issue of alimony, he found that Arthur worked for Jabil Circuit Inc. in a management capacity and, after allowable expenses, earned a monthly net income of $6,421.62. The chancellor also found that Marketa had spent ten years as a stay-at-home mother but had worked for the past two years as a personal trainer at the DeSoto Athletic Club. After allowable expenses, the chancellor calculated Marketa's earned monthly net income to be $2,585. He then found that, due to the difference in the parties' monthly incomes, the distribution left Marketa with a deficit in income of close to $4,000 a month. The chancellor then turned to an analysis of the *Armstrong*[1] factors to determine whether he

---

[1] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

should award Marketa alimony. Considering the *Armstrong* factors under the totality of the circumstances, the chancellor found that a need for alimony existed, and ordered Arthur to pay Marketa $725 a month in permanent alimony. The chancellor also ordered the parties to pay their own attorney's fees since they possessed the assets to do so and had failed to show an inability to pay.

## STANDARD OF REVIEW

¶5.     "When [an appellate court] reviews a chancellor's decision in a case involving divorce and all related issues, [the court's] scope of review is limited by the substantial evidence/manifest error rule." *Yelverton v. Yelverton*, 961 So. 2d 19, 24 (¶6) (Miss. 2007). Therefore, this Court will not disturb the chancellor's findings "unless the chancellor was manifestly wrong [or] clearly erroneous[,] or a clearly erroneous standard was applied." *Id*. (citation omitted).

## DISCUSSION

### 1. Marketa's Savings Account

¶6.     To equitably divide property, the chancellor must: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) equitably divide the marital assets. *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994); *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). Here, Arthur argues that the chancellor erred his determination of the property by excluding funds held in Marketa's savings account.

¶7.     In *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994), our supreme court stated

3

that all marital assets are subject to possible equitable distribution in accordance with the factors provided in *Ferguson*. Marital property is "any and all property acquired or accumulated during the marriage . . . and [is] subject to an equitable distribution by the chancellor." *Hemsley*, 639 So. 2d at 915. Further, such marital "[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside of the marriage." *Id*. at 914. We review a chancellor's equitable division under the familiar manifest-error standard of review. *Vaughn v. Vaughn*, 56 So. 3d 1283, 1288 (¶17) (Miss. Ct. App. 2011).

¶8.     Arthur argues that the chancellor erred in his classification and division of marital property. He claims that, since the chancellor classified his investment-account funds he withdrew during the parties' separation as marital property, the chancellor should have likewise considered Marketa's savings account as marital property.

¶9.     Arthur testified at the hearing that, prior to filing for divorce, he withdrew about $30,000 from an investment account. According to his testimony, Arthur used $20,000 of the withdrawn funds as a retainer for his attorney, he used some of the money to hire a private investigator, and he used the remainder of the money to take his children on several trips. The chancellor found that Arthur withdrew $38,400 from the marital assets and that Marketa would have otherwise been entitled to fifty percent of the funds. The chancellor therefore ordered Arthur to reimburse Marketa for half of the withdrawn funds.

4

¶10. Arthur also testified that he opened a savings account around the time he filed for divorce. On the day of the hearing, the account balance was $224.52. He also testified that he opened a checking account after filing for divorce. The checking account amounted to $2,000 on the day of the hearing.

¶11. Marketa testified that she, too, maintained a savings account after Arthur filed for divorce. She stated that, over the past two years, the maximum balance of the account was $5,000, following the filing of her 2012 separate tax return. She further testified that the account contained $2,500 before the hearing. After paying her attorney's fees that morning, the account balance dropped to $1,000. At the close of the hearing, the chancellor denied Marketa's request for attorney's fees because she failed to show an inability to pay, presumably since she could use her savings account to pay her attorney's fees. The chancellor did not address Marketa's savings account in his division of marital property.

¶12. The chancellor properly recognized Arthur's investment funds, withdrawn prior to separation, as marital property. In regard to Arthur's and Marketa's checking and savings accounts, the chancellor acknowledged that they maintained separate accounts after Arthur filed for divorce. The record reflects that Arthur had around $2,000 in checking and $224 in savings, while Marketa had around $250 in checking and $1,000 in savings. The chancellor did not classify any of those accounts as marital property. For that reason, we cannot find that the chancellor committed manifest error in classifying Marketa's savings account as nonmarital property.

## 2. Permanent Alimony

¶13.    The chancellor has broad discretion in alimony cases. *Byars v. Byars*, 850 So. 2d 147, 148 (¶3) (Miss. Ct. App. 2003). We will not reverse a chancellor's decision unless he committed manifest error or abused his discretion. *Id*. "Appellate courts need only to determine if the chancellor's decision was supported by credible evidence." *Id*. "The purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life." *Elliott v. Elliott*, 11 So. 3d 784, 786 (¶8) (Miss. Ct. App. 2009). Therefore, "permanent alimony should be considered if one spouse is left with a deficit after the division of marital assets." *Id*.

¶14.    Arthur argues that this Court should reverse the award of permanent alimony because the chancellor's finding that Marketa was left with a deficit was not supported by the record and that he erred in his analysis of the *Armstrong* factors.

¶15.    The chancellor evenly distributed the parties' marital estate, noting in his findings that a gross disparity existed between the parties' monthly incomes and that the property division left Marketa with a deficiency. He discussed in detail the *Armstrong* factors, which are: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home; (7) the age of the parties; (8) the standard of living of the parties; (9) the tax consequences of the support decree; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; and (12)

6

any other factor deemed to be fair and equitable. *Armstrong*, 618 So. 2d at 1280. Ultimately, the chancellor determined that Marketa would need $725 a month in alimony to account for the deficit between her income and expenses.

¶16. Arthur contests Marketa's alimony award chiefly due to income Marketa may have earned boxing. Marketa claimed on her financial statement that she earned a monthly income of $3,218 as a personal trainer and that, after allowable deductions, her monthly take-home pay amounted to $2,585.06. Marketa testified on cross-examination that she had received some income from boxing, though she was never asked how much. She said it "should" be included in her Uniform Chancery Court Rule 8.05 disclosures. She could have meant that it was omitted, or she could have meant that it was already included. Arthur's attorney did not question her further about this income. Although no specific reference to boxing income appears on her 8.05 statement, Marketa's income as an exercise instructor was paid in irregular amounts based on irregular hours spent in that activity, and this was broken down in some detail. Marketa attached copies of the checks detailing that income. Her boxing income could have been included there; it is just not clear from the record. Marketa was never actually asked how much income she earned boxing, nor did she ever clearly state that it was not included in her 8.05 disclosure.

¶17. The record reflects a marriage of eleven years, with Marketa staying at home to take care of the two children. For the last two years before trial in July 2013, she had worked as a personal trainer, but she was earning only a little more than a third of what her husband

made. The property division was essentially equal and cannot be said to have made up for the $4,000-per-month income disparity between the parties. *See Armstrong*, 618 So. 2d at 1280; *Gray v. Gray*, 562 So. 2d 79, 83 (Miss. 1990); *Box v. Box*, 622 So. 2d 284, 288 (Miss. 1993).

¶18. For the first *Armstrong* factor, the chancellor determined that Marketa's income was significantly less than Arthur's income and ruled in favor of Marketa. As to health and earning capacity, the chancellor recognized Marketa had only recently entered into the workforce. The chancellor also found the length of marriage favored Marketa. For the standard of living, the chancellor ruled in favor of Marketa, stating that she had grown "accustomed to staying at home, taking care of the children, not working, and being fully supported[.]" The court found the following *Armstrong* factors as neutral: needs of each party, obligations and assets, presence or absence of minor children, age of the parties, fault or misconduct, and wasteful dissipation of assets.

¶19. Given the evidence before him, and in light of his discussion of his evaluation of the evidence under the *Armstrong* factors, we find the chancellor acted within his discretion in awarding $725 per month in permanent alimony to Marketa.

¶20. **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**GRIFFIS, P.J., BARNES, ISHEE, MAXWELL AND JAMES, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND IRVING, P.J. WILSON, J., NOT PARTICIPATING.**

**CARLTON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶21.    I would affirm in part and reverse and remand in part the chancellor's judgment. Although I concur with the majority's decision to affirm the chancellor's determination and equitable distribution of the marital estate, I find that the chancellor erroneously awarded permanent alimony to Marketa because the evidence fails to establish that she suffered a need warranting an award of alimony. Moreover, the chancellor awarded alimony in excess of the purported deficit found by the chancellor. I respectfully submit that the chancellor abused his discretion in determining whether a need existed warranting an award of alimony. As a result, I concur in part and dissent in part from the majority's opinion.

¶22.    In support of his argument that this Court should reverse the chancellor's award of permanent alimony, Arthur asserts that the chancellor's finding that Marketa suffered a deficiency was not supported by the record. Arthur also asserts that a proper analysis of the *Armstrong*[2] factors, as applied to the facts in the record, mandates a reversal of the award of permanent alimony. I agree.

¶23.    "Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion." *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993) (internal citations omitted). "The purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new

---

[2] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

9

life." *Elliott v. Elliott*, 11 So. 3d 784, 786 (¶8) (Miss. Ct. App. 2009) (citation omitted). Permanent alimony should only be considered where one spouse is left with a deficit. *See id.* "[I]f the marital assets, after equitable division and in light of the parties' [nonmarital] assets, will adequately provide for both parties, then no more need be done." *O'Brien v. O'Brien*, 149 So. 3d 508, 515 (¶23) (Miss. Ct. App. 2014) (citation and internal quotation marks omitted).

¶24.    I acknowledge that, when determining whether to award alimony, a chancellor must consider the following factors:

1. The income and expenses of the parties;

2. The health and earning capacities of the parties;

3. The needs of each party;

4. The obligations and assets of each party;

5. The length of the marriage;

6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7. The age of the parties;

8. The standard of living of the parties, both during the marriage and at the time of the support determination;

9. The tax consequences of the spousal[-]support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party; or

10

12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Armstrong*, 618 So. 2d at 1280 (citations omitted).

¶25. On appeal, Arthur argues that the chancellor failed to consider in his analysis the income Marketa earned as a professional boxer and her increased earning capacity due to the additional personal-training certifications she received. Arthur also contends that the chancellor's findings regarding Marketa's financial statement were unsupported by the record. Furthermore, Arthur asserts that consideration of the *Armstrong* factors, including "the parties' equal parenting time with [their] children, Marketa's increased earning capacity, Marketa's lack of debt[,] and her admitted fault in the demise of the marriage[,]" negates an award of alimony.

¶26. After evenly distributing the parties' marital estate, the chancellor stated in his findings that a gross disparity existed between the parties' monthly incomes and that the property division left Marketa with a deficiency. The chancellor therefore analyzed the *Armstrong* factors to determine whether an award of alimony was appropriate. However, the application of the *Armstrong* factors to the evidence in the record fails to reflect that Marketa suffered a need necessitating an award of permanent alimony.

¶27. In considering the first *Armstrong* factor, the parties' income and expenses, the chancellor noted that Arthur earned substantially more income than Marketa. Specifically, the chancellor found that Marketa's monthly income from her work as a personal trainer amounted to less than half of Arthur's monthly income. The chancellor stated that he

11

therefore found this factor favored Marketa. However, in concluding that a gross disparity existed between the parties' incomes, the record reflects that the chancellor failed to consider Marketa's additional income earned from her work as a professional boxer. As reflected in the record, Marketa testified that she began earning additional income from boxing in August 2012.

¶28.     According to her testimony and the Rule 8.05[3] financial statement she submitted, Marketa claimed a total of $3,477.16 in living expenses. Marketa's list of expenses included the following items:  $693 for rent or mortgage; $88.33 for property taxes; $85.83 for property insurance; $900 for food and household supplies; $30 for water and sewer; $150 for electricity; $200 for household gas; $30 for telephone; $30 for laundry and cleaning; $100 for clothing; $100 for school expenses; $200 for entertainment; $100 for incidentals and miscellaneous; $200 for automobile gas and oil; $100 for automobile insurance; $150 for cable television; $100 for dining out; and $70 for pet expenses.

¶29.     With regard to expenses, Marketa admitted on cross-examination that Arthur actually paid for most of the household expenses during the parties' marriage and separation since they resided in the same house. Although Marketa included the household expenses as part of her total living expenses, she testified that Arthur completely paid the bills for the mortgage, property taxes, property insurance, water, electricity, telephone, automobile insurance, and cable television. The record shows the chancellor allowed Marketa housing

_____

[3] UCCR 8.05.

expenses equivalent to the house she lived in during the marriage. However, a difference exists between want and need, and the record fails to show the reasonableness of her purported expenses.

¶30. Relevant to her income, Marketa claimed on her financial statement that she earned a monthly income of $3,218 as a personal trainer and that, after allowable deductions, her monthly take-home pay amounted to $2,585.06. However, Marketa failed to include her other source of income, the money she earned as a professional boxer, on her financial statement. As the record further reflects, the chancellor failed to take this additional income source into consideration when determining whether an award of alimony was appropriate.

¶31. With regard to the next *Armstrong* factor, the parties' health and earning capacity, the chancellor found this factor favored Marketa since she entered the workforce within the last three years and possessed a lower earning capacity than Arthur. As the record reflects, however, Marketa earned several additional certifications since entering the workforce as a personal trainer. Marketa testified that these additional certifications allowed her to expand her services and clientele base, which would allow her to earn more money. Marketa also testified that, since August 2012, she had earned additional money as a professional boxer. Despite this evidence regarding Marketa's increased earning capacity and additional income sources, the chancellor still found that this factor favored an award of alimony.

¶32. Due to the joint-custody arrangement and equal division of the parties' assets, the chancellor found that the *Armstrong* factors regarding the needs of the parties, their

13

obligations and assets, and the presence or absence of minor children in the home constituted neutral factors. The chancellor also found the parties' ages to be a neutral factor since both Arthur and Marketa were thirty-seven years old at the time of their divorce.

¶33. Because the parties were married approximately eleven years, the chancellor found their marriage to be a lengthy one by "today's standards."[4] He therefore concluded that the *Armstrong* factor regarding the length of the parties' marriage favored Marketa. I respectfully submit that this finding and conclusion constituted an abuse of discretion and lacked factual support, particularly as applied to this case. Marketa did not forego a career or lose marketable skills to be a long-term homemaker. In fact, she reentered the work force before the divorce was filed. The record shows that Marketa was thirty-seven years old at the time of the divorce, with many more productive years ahead of her. The record also shows that Marketa's children were school-age.

¶34. The chancellor also looked at the parties' standard of living during their marriage and found that Marketa's "standard of living will have to change considerably as she will be . . . required to work in order to make a living. She will further be responsible for obtaining

---

[4] *But see Craft v. Craft*, 825 So. 2d 605, 611 (¶22) (Miss. 2002) (finding no abuse of discretion by the chancellor's refusal to award permanent or long-term periodic rehabilitative alimony in a divorce case dealing with a thirteen-year marriage). *Cf. Cheatham v. Cheatham*, 537 So. 2d 435, 438 (Miss. 1988) (discussing that a long marriage is one of the factors to consider when determining whether to award lump-sum alimony); *Terrell v. Terrell*, 133 So. 3d 833, 839-40 (¶¶19-20) (Miss. Ct. App. 2013) (affirming the award of lump-sum alimony and refusal of periodic alimony in a case involving a twenty-three-year marriage where the wife lacked a separate income and quit working to care for the household).

other housing as opposed to the marital residence." The chancellor nonetheless awarded her living expenses so that she could obtain equivalent housing to what she enjoyed during the marriage, despite the fact that such housing exceeds her need and that Marketa's conduct caused the divorce. Based on his findings, the chancellor concluded that the factor regarding the parties' standard of living weighed in favor of Marketa.

¶35.	During his findings on the *Armstrong* factor pertaining to the parties' standard of living, the chancellor stated that Marketa had grown "accustomed to staying at home, taking care of the children, not working, and being fully supported[.]" This finding lacks a factual basis since she was already working before the divorce and engaged in an extramarital affair stemming from a workplace relationship. By the time Arthur filed for divorce, the couple's children were attending school and were ages nine and twelve. As the record reflects, Marketa no longer remained at home with the parties' children but instead worked as a personal trainer. Thus, when Arthur filed for divorce in August 2011, Arthur was not the sole source of her financial or other support, since Marketa had already been working outside the home and earning her own income since April 2011. Also, the record provides evidence showing that Marketa no longer stayed home and cared for children during the day.

¶36.	Turning to the next *Armstrong* factor, the chancellor considered the parties' level of fault or misconduct. The chancellor found this factor clearly favored Arthur since Marketa's

15

affair, which began in May 2011, contributed to the breakup of the parties' marriage.[5] As to the final factor regarding wasteful dissipation of assets, the chancellor found that neither party unreasonably dissipated any assets. He therefore concluded that this factor was neutral.

¶37. After analyzing the *Armstrong* factors, the chancellor found an award of alimony was appropriate. He therefore turned to a discussion of the submissions Marketa made in her Rule 8.05 financial statement. In looking at Marketa's financial statement, the chancellor determined that Marketa's estimated expenses were "very conservative" and that Marketa would need $725 a month in alimony to account for the deficit between her income and expenses.

¶38. As reflected in the record, the chancellor first acknowledged that Marketa estimated her housing costs to be $852 since that was the approximate cost of the parties' current monthly mortgage payments, property tax, and property insurance. Considering the current condition of DeSoto County's rental market, the chancellor expressed his doubt that Marketa would be able to rent the type of home she was accustomed to for $852. The record reflects, however, that in reaching this conclusion the chancellor failed to consider any evidence regarding what constituted reasonable rent in that geographical area.

¶39. In addition, the chancellor found that Marketa's financial statement reflected a disposable income of $2,585 and purported expenses of $3,977. The chancellor determined

---

[5] *See O'Brien*, 149 So. 3d at 514 (¶20) (acknowledging that marital fault is relevant when there is a claim for alimony).

that Marketa's expenses exceeded her income by $1,392. After accounting for the $767 payment from Arthur that Marketa would receive for child support, the chancellor found Marketa's total deficit amounted to $625. In concluding his analysis, the chancellor awarded Marketa $725 a month in permanent alimony, which exceeded her alleged deficit of $625.

¶40. Awarding alimony in excess of the purported deficit displays an abuse of discretion by the chancellor, and this purported deficit fails to reflect an established "need," as is required to warrant an award of alimony. An application of the *Armstrong* factors to the evidence of this case fails to display a need by Marketa to support an award of permanent alimony.

¶41. On appeal, this Court reviews the chancellor's award of alimony for manifest error. *See Armstrong*, 618 So. 2d at 1280. Based upon the foregoing, I find an abuse of discretion in the chancellor's award of permanent alimony to Marketa. The evidence in the record fails to support the chancellor's award of alimony and fails to establish that Marketa suffered a need following the equitable division of the parties' marital estate. Because I would reverse and remand on the issue of the chancellor's award of permanent alimony to Marketa, I dissent in part from the majority's opinion.

**LEE, C.J., AND IRVING, P.J., JOIN THIS OPINION.**

17