CARLTON, J.,
concurring in part and dissenting in part:
¶ 21. I would affirm in part and reverse and remand in part the chancellor’s judgment. Although I concur with the majority’s decision to affirm the chancellor’s determination and equitable distribution of the marital estate, I find that the chancellor; erroneously awarded permanent alimony to Marketa because the .evidence fails to establish that she suffered a need warranting an.award of alimony. Moreover, the-chancellor awarded alimony in excess of the purported deficit found by the chancellor. I respectfully submit that the chancellor abused his discretion in determining whether a need existed warranting an award of alimony. As a result, I concur in part and dissent in part from the majority’s opinion.
¶22. In support of his argument, .that this Court should reverse the chancellor’s award of permanent alimony, Arthur asserts that the chancellor’s finding that Marketa suffered a deficiency was not supported by the record. Arthur also asserts that a proper analysis of the Armstrong[2] factors, as applied to the facts in the record, mandates a reversal of the award of permanent alimony. I agree.' ’
¶23. “Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion.” Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1998) (internal citations omitted). “The purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life.” Elliott v, Elliott, 11 So.3d 784, 786 (¶ 8) (Miss.Ct.App.2009) (citation omitted). Permanent alimony should only be considered where one spouse is left with a deficit. See id. “[I]f the-marital assets, after equitable division and in light of the parties’ [nonmarital] assets, will adequately provide for both parties, then no more need be done." O’Brien v. O’Brien, 149 So.3d 508, 515 (¶ 28) (Miss.Ct.App.2014) (citation and internal quotation marks omitted).
¶ 24.. I acknowledge, that, when determining whether to award, alimony, a chancellor must consider the following factors:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party; . ,
6.The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the Support • determination;
*57 9. The tax consequences of the spousal[-]support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or .
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
Armstrong, 618 So.2d at 1280 (citations omitted).
¶ 25. On appeal, Arthur argues that the chancellor failed to consider in his analysis the income Marketa earned as a professional boxer and her increased earning capacity due to the additional personal-training certifications she received. Arthur also contends that the chancellor’s findings regarding Marketa’s financial statement were unsupported by the record. Furthermore, Arthur asserts that consideration of the Armstrong factors, including “the parties’ equal parenting time with [their] children, Marketa’s increased earning capacity, Marketa’s lack of debt[,] and her admitted fault in the demise of the marriage[,]” negates an award of alimony.
¶ 26. After evenly distributing the parties’ marital estate, the chancellor stated in his findings that a gross disparity existed between the parties’ monthly incomes and that the property division left Marketa with a deficiency. The chancellor therefore analyzed the Armstrong factors to determine whether an award of alimony was appropriate. However, the application of the Armstrong factors to the evidence in the record fails to reflect that Marketa suffered a need necessitating an award of permanent alimony. "
¶27. In considering the first Armstrong factor, the parties’ income and expenses, the chancellor noted that Arthur earned substantially more income than Marketa. Specifically, the. chancellor found that Marketa’s monthly income from-her work as a personal trainer amounted to less than half of Arthur’s monthly income. The chancellor stated .that he therefore found this factor favored Marke-ta. However, in concluding that a gross disparity existed between the parties’ incomes, the record reflects that the chancellor failed to consider Marketa’s additional-income earned from her work as a professional boxer. As reflected in the record, Marketa. testified that she began earning additional income from boxing in August 2012.
¶28. According to her testimony- and the Rule 8.05[3] financial statement she submitted, Marketa claimed a total of $3,477.16 in living expenses. Marketa’s list of expenses included the following items: $693 for rent or mortgage; $88.33 for property taxes; $85.83 for -property insurance; $900 for food and household supplies; $30 for water and sewer; $150 for electricity; $200 for household gas; $30 for telephone;. $30 for. laundry and cleaning; $100 .for clothing; $100 for school expenses; $200 for entertainment; $100 for incidentals and miscellaneous; $200 for automobile gas and oil;. $100 for automobile insurance; $150 for cable television; $100 for. dining out; and $70- for pet expenses;
¶ 29. With regard to expenses, Marketa admitted on cross-examination that Arthur actually paid for most of the household expenses during the parties’ marriage and separation since they resided in the same house. Although Marketa included the household expenses as part of her total living expenses, she testified that Arthur completely paid the bills for the mortgage, property taxes, property insurance, water, electricity, telephone, automobile insur- *58 anee, and cable television. The record shows the chancellor allowed Marketa housing expenses equivalent to the house she lived in during the marriage. However, a difference exists between want and need, and the record fails to show the reasonableness of her purported expenses.
¶ 30. Relevant to her income, Marketa claimed on her financial statement that she earned a monthly income of $3,218 as a personal trainer and that, after allowable deductions, her monthly take-home pay amounted to $2,585.06. However, Marketa failed to include her other source of income, the money she earned as a professional boxer, on her financial statement. As the record further reflects, the chancellor failed to take this additional income source into consideration when determining whether an award of alimony was appropriate.
¶ 31. With regard to the next Armstrong factor, the parties’ health and earning capacity, the chancellor found this factor favored Marketa since she entered the workforce within the last three years and possessed a lower earning capacity than Arthur. As the record reflects, however, Marketa earned several additional certifications since entering the workforce as a personal trainer. Marketa testified that these additional certifications allowed her to expand her services and clientele base, which would allow her to earn more money. Marketa also testified that, since August 2012, she had earned additional money as a professional boxer. Despite this evidence regarding Marketa’s increased earning capacity and additional income sources, the chancellor still found that this factor favored an award of alimony.
¶ 32. Due to the joint-custody arrangement and equal division of the parties’ assets, the chancellor found that the Armstrong factors regarding the needs of the parties, their obligations and assets, and the presence or absence of minor children in the home constituted neutral factors. The chancellor also found the parties’ ages to be a neutral factor since both Arthur and Marketa were thirty-seven years old at the time of their divorce.
¶ 33. Because the parties were married approximately eleven years, the chancellor found their marriage to be a lengthy one by “today’s standards.”[4] He therefore concluded that the Armstrong factor regarding the length of the parties’ marriage favored Marketa. I respectfully submit that this finding and conclusion constituted an abuse of discretion and lacked factual support, particularly as applied to this case. Marketa did not forego a career or lose marketable skills to be a long-term homemaker. In fact, she reentered the work force before the divorce was filed. The record shows that Marketa was thirty-seven years old at the time of the divorce, with many more productive years ahead of her. The record also shows that Marke-ta’s children were school-age.
¶ 34. The chancellor also looked at the parties’ standard of living during their marriage and found that Marketa’s “standard of living will have to change considerably as she will be ... required to work in *59 order to make a living;. She will further be responsible for obtaining other housing as opposed to the marital residence.” The chancellor nonetheless awarded her living expenses so that she could obtain equivalent housing to what she enjoyed during the marriage, despite -the fact' that such housing exceeds her need and that Marke-ta’s conduct caused the divorce; Based on his findings, the chancellor concluded that the factor regarding the parties’ standard of living weighed in favor of Marketa.
¶ 35. During his findings on the Armstrong factor pertaining to the parties’ standard of living, the chancellor stated that Marketa had grown “accustomed to staying at home, taking care of the children, not working, and being fully supported[.]” This finding lacks a factual basis since she was already working before the divorce and engaged in an extramarital affair stemming from a workplace relationship. By the time Arthur filed for divorce, the couple’s children were attending school and were ages nine and twelve. As the record reflects, Marketa no longer remained at home with the parties’ children but instead worked as a personal trainer. Thus, when Arthur filed for divorce in August 2011, Arthur was not the sole source of her financial or other support, since Marketa had already been working outside the home and earning her own income since April 2011. Also, the record provides evidence showing that-Marketa no longer stayed home and cared for children during the day.
¶ 36. Turning to the next Armstrong factor, the chancellor considered the parties’ level of fault or misconduct. The chancellor found this factor clearly favored Arthur since Marketa’s affair, which began in May 2011, contributed to the breakup of the parties’ marriage.[5] As to the final factor regarding wasteful dissipation of assets, the chancellor found that neither party unreasonably dissipated any assets. He therefore concluded that this factor was neutral.
¶37. After analyzing the Armstrong factors, the chancellor found, an award of alimony' was appropriate. He therefore turned to a discussion of the submissions Marketa made in her.Rule 8.05 financial statement. In looking at Marketa’s financial statement, the chancellor determined that Marketa’s estimated expenses were “very conservative” and that Marketa would need $725 a month in alimony to account for the deficit between her income and expenses. • ‘.
¶ 38. As reflected' in the record, the chancellor first acknowledged that Marke-ta estimated her housing costs to be $852 since that was'the approximate cost of the parties’ current monthly mortgage payments, property tax, and property insurance. Considering the current condition of DeSoto County’s rental market, the chancellor expressed his doubt that Marketa would be able to rent the type of home she was accustomed to for $852. The record reflects, however, that in. reaching this conclusion the chancellor failed to consider any evidence regarding what constituted reasonable rent in that 'geographical area.
¶ 39. In addition, the chancellor found that Marketa’s financial statement reflected a disposable income of $2,585 and purported expenses of $3,977.. The chancellor determined that Marketa’s expenses exceeded her income by $1,392. After accounting for the $767 payment from Arthur that Marketa would receive for child support, the chancellor found Marketa’s *60 total deficit amounted to $625. In concluding his analysis, the- chancellor awarded Marketa $725 a month in permanent alimony, which exceeded her alleged deficit of $625. ,
¶ 40. Awarding alimony in excess of the purported deficit displays an abuse of discretion by the chancellor, and this purported deficit fails to reflect an established “need,” as is required to warrant an award of alimony, An application of the Armstrong factors to the evidence of this case fails to display a need by Marketa to support an award of permanent alimony.
¶ 41. On appeal, this Court reviews the chancellor’s award of alimony for manifest error. See Armstrong, 618 So.2d at 1280. Based upon the foregoing, I find an abuse of discretion in the chancellor’s award of permanent alimony to Marketa. The evidence in the record.fails to support the chancellor’s award of alimony and fails to establish that Marketa suffered a need following the equitable division of the parties’ marital estate. Because I would reverse and remand on the issue of the chancellor’s award of permanent alimony to Marketa, I dissent in part from the majority’s opinion.
LEE, C.J., AND IRVING, P.J., JOIN THIS OPINION.

. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss, 1993).

. UCCR 8.05.

. But see Craft v. Craft, 825 So.2d 605, 611 (¶ 22) (Miss.2002) (finding no abuse of discretion by the chancellor's refusal to award per- , manent or long-term periodic rehabilitative alimony in a divorce case dealing with a thirteen-year marriage). Cf. Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988) (discussing that a long marriage is one of the factors to consider when determining whether to award lump-sum alimony); Terrell v. Terrell, 133 So.3d 833, 839-40 (¶¶ 19-20) (Miss.Ct.App.2013) (affirming the award of lump-sum alimony and refusal of periodic alimony in a case involving a twenty-three-year marriage where the wife lacked a separate income and quit working to care for the household).

. See O’Brien, 149 So.3d at 514 (¶ 20) (acknowledging that marital fault is relevant when there is a claim for alimony).