# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01564-COA

**BOBBY FRANKLIN BASWELL**                          **APPELLANT**

**v.**

**ELIZABETH BASWELL**                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/01/2015 |
| TRIAL JUDGE: | HON. JOHN ANDREW HATCHER |
| COURT FROM WHICH APPEALED: | UNION COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN PATRICK ROBBINS |
| ATTORNEY FOR APPELLEE: | CHRISTOPHER ALAN CHILDERS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | GRANTED THE PARTIES A DIVORCE AND AWARDED THE APPELLEE ALIMONY AND ATTORNEY'S FEES |
| DISPOSITION: | AFFIRMED - 01/31/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, J., FOR THE COURT:**

¶1. Bobby Baswell appeals the Union County Chancery Court's judgment awarding Elizabeth Baswell periodic alimony and attorney's fees. On appeal, Bobby raises the following issues: (1) whether the chancellor erred by awarding Elizabeth periodic alimony; and (2) whether the chancellor erred by awarding Elizabeth attorney's fees. Finding no error, we affirm.

## FACTS

¶2. Bobby and Elizabeth married on October 4, 1985. In March 2013, they separated.

On February 23, 2015, Bobby filed a complaint for divorce. In an order filed on October 2, 2015, the chancellor granted the parties an irreconcilable-differences divorce. The chancellor acknowledged that, on the day of trial, the parties stipulated the only remaining issues between them related to alimony and attorney's fees.[1]

¶3.    The chancellor found that the parties' division of their assets and debts left Elizabeth with a deficit. As a result, the chancellor analyzed the *Armstrong*[2] factors to determine whether to award Elizabeth periodic alimony. The chancellor first determined that Bobby's net monthly income totaled $2,544.79 and that his reasonable monthly expenses totaled $1,477.50, which left Bobby with a monthly surplus of $1,067.29. The chancellor next determined that Elizabeth's net monthly income totaled $907 and that her reasonable monthly expenses totaled $886.59, which left her with a monthly surplus of $20.41. The chancellor therefore found that consideration of the parties' incomes and expenses favored Elizabeth. In addition, based on his calculations of the parties' incomes and expenses, the chancellor concluded that the needs of each party was a factor that also weighed in Elizabeth's favor.

¶4.    While Bobby was healthy and possessed a good earning capacity, the chancellor found that Elizabeth had received Social Security disability pay for a number of years and that her disabilities prohibited her from working. As a result, the chancellor concluded that this factor also favored Elizabeth. In considering the parties' obligations and assets, the

---

[1] Although the parties had three children during their marriage, all three had reached the age of majority by the time of the divorce hearing.

[2] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

chancellor noted that Bobby's Rule 8.05[3] financial statement reflected a monthly automobile payment of $300 but no actual automobile. The chancellor also noted the parties' agreement that Elizabeth would keep the marital home and retain responsibility for the related mortgage payments. Based on these considerations, the chancellor concluded that this factor favored Elizabeth.

¶5.    The chancellor next found that the parties had been married twenty-seven years at the time of their separation and almost thirty years at the time of their divorce. As a result, the chancellor determined that the length of the parties' marriage favored Elizabeth. Although the parties had three children during their marriage, the children were adults. Thus, even though Bobby's fiancée and her grandchildren lived with Bobby, and even though the parties' grown daughter and her husband lived with Elizabeth, the chancellor concluded that the parties had no legal obligation to pay for anyone other than themselves. As a result, the chancellor considered this factor to be neutral. The chancellor likewise considered the parties' ages—Bobby was fifty years old, and Elizabeth was forty-seven years old—to be a neutral factor.

¶6.    The chancellor next found that the parties had a marginal standard of living prior to their final separation. Following their final separation, Bobby had been forced to file for bankruptcy, and the chancellor determined that Elizabeth's lifestyle had diminished considerably. As a result, the chancellor found that each party's standard of living had deteriorated. However, after concluding that Elizabeth's lifestyle had deteriorated the most,

---

[3] UCCR 8.05.

the chancellor determined that this factor weighed in her favor.

¶7. The chancellor also considered any tax consequences resulting from a spousal-support order, but he noted that no evidence had been submitted on the issue. As a result, the chancellor concluded that this factor was neutral. In addition, the chancellor found no evidence that either party had wastefully dissipated assets, and he therefore determined this factor to be neutral.

¶8. In discussing the parties' fault or misconduct and any other just and equitable factors, the chancellor concluded that these factors clearly favored Elizabeth. The chancellor stated that Bobby, "without warning or notice, vacated the marital home, moved in with the woman he calls his fiancé[e] . . . [and] her three (3) grandchildren, and continues to live with her in a state of unlawful cohabitation." The chancellor further stated that Bobby "left the marital relationship without justifiable cause or reason under the law at a time when [Elizabeth] was disabled, he knew her disability, and her disability has since worsened to . . . where she [cannot] even earn the little bit of income she was making while the parties were together . . . ." In addition, the chancellor reiterated his finding that, unlike Elizabeth, Bobby possessed expendable income after his reasonable monthly expenses and was therefore in a far better position to care for himself.

¶9. Based on his analysis of the *Armstrong* factors, the chancellor concluded that periodic alimony was proper, and he ordered Bobby to pay Elizabeth $525 a month. The chancellor then considered the issue of attorney's fees. After finding that Elizabeth possessed a "gross inability" to pay her attorney's fees, the chancellor ordered Bobby to pay reasonable

attorney's fees not to exceed $1,500. Aggrieved by the chancellor's judgment, Bobby appeals.

## STANDARD OF REVIEW

¶10.    "This Court's standard of review in domestic[-]relations matters is extremely limited." *Phillips v. Phillips*, 45 So. 3d 684, 692 (¶23) (Miss. Ct. App. 2010). We refuse to disturb a chancellor's findings of fact unless the findings were manifestly wrong or clearly erroneous or unless the chancellor applied an erroneous legal standard. *Id.* When substantial evidence in the record supports the chancellor's factual findings, we will not reverse the chancellor's decision. *Id.* However, we review questions of law de novo. *Smith v. Wilson*, 90 So. 3d 51, 56 (¶13) (Miss. 2012).

## DISCUSSION

I.    **Whether the chancellor erred by awarding Elizabeth periodic alimony.**

¶11.    Bobby argues that this Court should reverse the award of periodic alimony because the chancellor improperly evaluated the *Armstrong* factors. Specifically, Bobby takes issue with the chancellor's findings on the following factors: (1) the parties' incomes and expenses; (2) the parties' obligations and assets; (3) the parties' standards of living; and (4) the parties' fault or misconduct.

¶12.    "Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless [he] was manifestly in error in his finding of fact and abused his discretion." *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993) (internal citations omitted). "[I]f the marital assets, after equitable division and in light of the parties'

5

[nonmarital] assets, will adequately provide for both parties, then no more need be done." *O'Brien v. O'Brien*, 149 So. 3d 508, 515 (¶23) (Miss. Ct. App. 2014) (citation and internal quotation marks omitted). However, if a deficit remains for one of the parties, the chancellor should determine whether an award of alimony is appropriate. *Coggins v. Coggins*, 132 So. 3d 636, 640 (¶9) (Miss. Ct. App. 2014). The chancellor makes this determination by applying the *Armstrong* factors. *Id.*

¶13. Here, the chancellor concluded that the parties' agreed-upon division of their assets and debts left Elizabeth with a deficit. After considering the *Armstrong* factors, the chancellor ordered Bobby to pay Elizabeth $525 a month in periodic alimony. As previously stated, Bobby disputes the chancellor's findings of fact with regard to four of the *Armstrong* factors. However, upon review, we find no manifest error or abuse of discretion in the chancellor's findings with regard to these four factors.

¶14. With regard to the parties' incomes and expenses, the record reflects that the chancellor's calculation of Bobby's monthly expenses differed from the figures Bobby provided on his Rule 8.05 financial statement. Although Bobby argues that the chancellor erred by reducing his claimed expenses for certain categories, the record contains substantial evidence to support the chancellor's findings. The chancellor first determined that Bobby listed several expenses on his financial statement that were voluntary rather than mandatory. As a result, in calculating Bobby's actual monthly income and expenses, the chancellor excluded those expenses that were voluntary. In addition, the chancellor found the amounts Bobby listed for certain other expenses to be unreasonable since the amounts covered Bobby,

6

his fiancée, and his fiancée's three grandchildren. Because Bobby possessed no legal obligation to support his fiancée or her grandchildren, the chancellor adjusted the amounts of Bobby's listed expenses to reflect an amount that provided for Bobby alone. Since the record contains substantial evidence to support the chancellor's finding that this factor favored Elizabeth, we find no manifest error.

¶15. With regard to the parties' obligations and assets, Bobby claims the chancellor erred by failing to consider as an obligation the $300 automobile payment Bobby listed. Although he failed to list a specific automobile on his Rule 8.05 financial statement, Bobby asserts that he listed the payment and testified at the hearing that he makes the payment. Bobby argues that, "[b]y not considering this $300 obligation, the [chancellor] made further funds available to [Elizabeth's] alimony obligation but did not take into account the need for [Bobby] to meet his own financial obligations."

¶16. While acknowledging Bobby's testimony that he had a 2004 Trailblazer, the chancellor noted that Bobby also testified he was borrowing his brother's truck and that the loan for the Trailblazer was in both his and his fiancée's names. After determining that Bobby's Rule 8.05 financial statement failed to provide any evidence that Bobby owned an automobile, the chancellor concluded that no such payments should be considered. Upon review, we find no manifest error in the chancellor's factual findings regarding this factor.

¶17. As to the chancellor's consideration of the parties' fault or misconduct, Bobby asserts that his extramarital relationship was not the reason—or at least not the only reason—for the parties' separation. At the hearing, Bobby testified that, prior to their separation, Elizabeth

7

helped provide in-home care for a sick elderly patient. Bobby stated that Elizabeth's job kept her from the marital home almost all day and all night. Bobby further stated that he almost never saw Elizabeth unless he went to her place of work, and he testified that the parties frequently slept in separate bedrooms and kept separate finances. In addition, Bobby testified that the parties argued over Elizabeth's work schedule and that he asked Elizabeth to be home on a more regular basis. Based on these assertions, Bobby argues on appeal that the chancellor abused his discretion by only holding Bobby accountable for the parties' separation.

¶18. Despite Bobby's argument, Elizabeth provided testimony during the hearing to refute his assertions. Elizabeth testified that she and Bobby were not fighting at the time he left the marital home and that, as far as she had been aware, she did not do anything to cause the separation. Elizabeth further stated that Bobby never mentioned to her that he was unhappy with her work schedule. Instead, Elizabeth testified that, about a week after Bobby moved out, he told her that he had left because he had cheated on her. Based on the testimony and evidence presented during the hearing, the chancellor found that Bobby's misconduct had contributed to the breakdown of the parties' marriage and that consideration of this factor strongly and clearly favored Elizabeth. Due to the substantial evidence in the record to support the chancellor's finding, we find no manifest error.

¶19. With regard to the final disputed factor—the parties' standards of living—Bobby argues that the chancellor "abused his discretion by using the award of alimony as a punitive tool to punish [Bobby] for adultery" rather than fashioning a remedy that allowed Bobby to

also maintain a reasonable standard of living. To support this assertion, Bobby alleges that the chancellor repeatedly referred to Bobby's extramarital relationship as "unlawful" and "illegal," and he contends that the chancellor failed to acknowledge that Elizabeth's regular absences from the home contributed to the breakdown of the parties' marriage. According to Bobby, the chancellor's reduction of the allotted amounts for many of Bobby's listed monthly expenses, coupled with the amount of the alimony award, prevents him from maintaining any reasonable standard of living. As previously discussed, however, we find substantial evidence in the record to support the chancellor's reduction of several of Bobby's listed monthly expenses and his determination that Bobby's extramarital relationship led to the breakdown of the parties' marriage. We further find substantial credible evidence to support the chancellor's conclusion that Elizabeth's standard of living had more significantly deteriorated since the parties' separation.

¶20. Thus, after reviewing Bobby's claim that the chancellor improperly evaluated four of the *Armstrong* factors, we find no manifest error in the chancellor's findings. The record contains substantial credible evidence to support the chancellor's findings and his award of periodic alimony to Elizabeth. As a result, this assignment of error lacks merit.

**II. Whether the chancellor erred by awarding Elizabeth attorney's fees.**

¶21. Bobby also asserts that the chancellor erred by awarding Elizabeth attorney's fees up to the amount of $1,500 because Elizabeth never submitted evidence of her attorney's fees. With regard to attorney's fees, this Court recently stated:

> An award of attorney's fees is appropriate in a divorce case where the

9

requesting party establishes an inability to pay. However, if a party is financially able to pay her attorney, an award of attorney's fees is not appropriate. As the issue of whether to award attorney's fees in a divorce case is a discretionary matter left to the chancellor, this Court is reluctant to disturb such a finding.

*Williams v. Williams*, 179 So. 3d 1242, 1254 (¶42) (Miss. Ct. App. 2015) (internal citations and quotation marks omitted). "Unless the chancellor is manifestly wrong, his decision regarding attorney['s] fees will not be disturbed on appeal." *Gaiennie v. McMillin*, 138 So. 3d 131, 137 (¶15) (Miss. 2014) (citation omitted).

¶22. "In order to determine the amount of attorney's fees, a chancellor must look to the factors enumerated in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982)." *Branch v. Branch*, 174 So. 3d 932, 945 (¶57) (Miss. Ct. App. 2015). In *Branch*, this Court recognized:

> The court in *McKee* stated: We are also of the opinion the allowance of attorney's fees should be only in such amount as will compensate for the services rendered. It must be fair and just to all concerned after it has been determined that the legal work being compensated was reasonably required and necessary. The specific factors include[:]
>
> > [T]he relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
>
> Further, where the record shows an inability to pay and a disparity in the relative financial positions of the parties, there is no error in awarding attorney's fees.

*Branch*, 174 So. 3d at 945-46 (¶58) (internal citations and quotation marks omitted).

¶23. In *Branch*, the chancellor found that the ex-wife lacked the ability to pay her

10

attorney's fees. *Id.* at 946 (¶59). This Court stated that, although the chancellor never "explicitly consider[ed] the individual *McKee* factors, the chancellor found the [ex-wife's attorney's] fees reasonable in accordance with *McKee*." *Id.* Despite some omissions in the chancellor's findings and the lack of a factor-by-factor analysis under *McKee*, we concluded that the chancellor accurately relied on the ex-wife's financial position and correctly awarded attorney's fees. *Id.* at (¶¶59, 61). We therefore found no manifest error in the chancellor's decision to award reasonable attorney's fees. *Id.* at (¶61).

¶24. In the present case, Elizabeth testified as to the severity of her overall financial situation. Like in *Branch*, the record here fails to reflect that the chancellor explicitly considered the *McKee* factors or conducted a factor-by-factor analysis under *McKee*. Instead, based on the evidence and testimony before him, the chancellor appears to have simply concluded that Elizabeth had proven her inability to pay her attorney's fees. The chancellor stated in his order that Elizabeth had incurred attorney's fees but that she had a "gross inability" to pay the fees. As a result, the chancellor ordered Bobby to pay Elizabeth's reasonable attorney's fees not to exceed $1,500 at an hourly rate of $175 an hour, plus actual, necessary, and reasonable expenses. The chancellor further stated that, "[I]f challenged in regard to the issue of attorney's fees and expenses, [Elizabeth's] attorney shall submit an itemized bill for same at the hourly rate he did charge, not to exceed that set by the [c]ourt . . . ." However, the record reflects no evidence that Bobby ever requested, or that Elizabeth's attorney ever provided, an itemized bill for attorney's fees.

¶25. Upon review, we find no abuse of discretion in the chancellor's conclusion that

11

Elizabeth lacked the ability to pay her attorney's fees based on the evidence and testimony of her overall financial situation. We therefore find no manifest error in the chancellor's decision to award Elizabeth reasonable attorney's fees. Accordingly, this issue lacks merit.

¶26. **THE JUDGMENT OF THE UNION COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.**