# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01168-COA

**THOMAS ARMSTARD OATES**                                                                 **APPELLANT**

**v.**

**DEBRA FAYE COLEMAN MORMAN OATES**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/16/2018 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD JR. |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM STACY KELLUM III |
| ATTORNEY FOR APPELLEE: | DEBRA FAYE COLEMAN MORMAN OATES (PRO SE) |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 02/18/2020 |

**BEFORE CARLTON, P.J., WESTBROOKS AND McCARTY, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     After a hearing on May 10, 2018, the chancery court granted the parties a divorce based upon a finding of adultery on the part of Thomas Oates. The chancery court ordered Thomas to pay alimony and attorney's fees, among other things. Aggrieved, Thomas appeals. He argues that chancery court erred with regard to periodic alimony, lump-sum alimony, attorney's fees, and the classification of thirty-nine acres of land as separate property. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The parties were married on February 23, 2002, in Grenada County, Mississippi. They separated on or about July 1, 2015. At some point prior to the separation, Thomas began

having at least one extra-marital affair. Debra Oates filed for a fault-based divorce, due to Thomas's alleged extra-marital affairs, in the Chancery Court of Montgomery County, Mississippi. The complaint for divorce was heard on May 10, 2018, and the chancellor rendered a bench opinion granting Debra a divorce as requested. With specific reference to the *Talbert*[1] analysis, the chancellor found clear and convincing evidence, including the admission by Thomas, proving Thomas engaged in at least one adulterous affair with another person during his marriage with Debra. On May 16, 2018, the chancery court entered an order commensurate with the bench opinion. After consideration was given to the factors in *Ferguson*,[2] *Albright*,[3] and *Armstrong*,[4] the chancellor made findings concerning the equitable distribution of property, the subject of alimony, and attorney's fees. Among other things, the court awarded Debra the marital home and the thirty-nine acres surrounding the marital home. Thomas was ordered to pay alimony in the amount of $504.00 per month; to pay $2,000.00 in lump-sum alimony to pay off a vehicle debt; and to pay Debra's attorney's fees in the amount of $8,538.88. Aggrieved, Thomas appeals.

## STANDARD OF REVIEW

¶3.     Awards of alimony are matters "within the discretion of the Chancellor." *Powers v. Powers*, 568 So. 2d 255, 257 (Miss. 1990). "[T]his appellate court will not reverse unless

---

[1] *Talbert v. Talbert*, 759 So. 2d 1105 (Miss. 1999).

[2] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

[3] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

[4] *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993).

2

the Chancellor was manifestly in error in his finding of fact and manifestly abused his discretion." *Id*. at 258. "Our standard of review for an award of alimony is very clear. Such awards are left to the discretion of the chancellor." *Voda v. Voda*, 731 So. 2d 1152, 1154 (¶7) (Miss. 1999) (citing *Armstrong*, 618 So. 2d at 1280). "Lump sum alimony is a final settlement between husband and wife which cannot be modified absent fraud." *Id*. at 1155 (¶9). The Supreme Court has stated that "[o]ur job is not to re-weigh the evidence to see if, confronted with the same conflicting evidence, we might decide the case differently. Rather, if we determine that there is substantial evidence in the record to support the findings of the chancellor, we ought properly to affirm." *Carter v. Carter*, 735 So. 2d 1109, 1114 (¶18) (Miss. Ct. App. 1999). "As to matters of law, however, a different standard applies. In that case, our review is de novo, and if we determine that the chancellor applied an incorrect legal standard, we must reverse." *Id*. at (¶20).

## DISCUSSION

¶4.     Thomas argues that the chancellor erred with regard to the award of periodic alimony and lump-sum alimony. "Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless he was manifestly in error in his finding of fact and abused his discretion." *Armstrong*, 618 So. 2d at 1280. "If the marital assets, after equitable division and in light of the parties' [non-marital] assets, will adequately provide for both parties, then no more need be done. However, if a deficit remains for one of the parties, the chancellor should determine whether an award of alimony is appropriate." *Baswell v. Baswell*, 217 So. 3d 753, 756 (¶12) (Miss. Ct. App. 2017) (citation omitted). "The chancellor

makes this determination by applying the *Armstrong* factors." *Id.*

¶5.     In the instant case, the chancellor came to the conclusion that Debra was left with a deficit. After considering the *Armstrong* factors, the chancellor ordered Thomas to pay Debra $504.00 per month in periodic alimony and a one-time, lump-sum payment of $2,000.00 to pay off the remaining balance on the vehicle Debra drove. The trial court determined, as Thomas admitted, that the marriage ended because of Thomas's extra-marital affair. Further, the chancellor determined, after hearing testimony and reviewing documentation from each party, that Thomas had a net income of $33,000.00 per year. After hearing testimony and reviewing documentation provided by both parties, the chancellor determined Debra had been a housewife and was further unable to work due to a liver condition that rendered her unemployable. The chancellor specifically determined that Debra had approximately $2,000.00 in monthly expenses and that Thomas had approximately $2,300.00 in monthly expenses.

¶6.     After going through each *Armstrong* factor in detail on the record, the chancellor stated:

> Looking at all of those factors as set forth in *Armstrong v. Armstrong*, the Court finds that periodic alimony in the amount of $504 is to be paid by the defendant for the plaintiff commencing May 15 and each and every 15 of the month thereafter until modified or terminated by the Court or by the remarriage or death of the plaintiff.
>
> Additionally, in order to compensate her with the payment of the Murano, which the evidence reflects he had agreed to pay initially, the Court finds that the amount of $2,000 in lump sum alimony should be payable to her within 30 days of this date in order to pay off that vehicle as it currently stands.

After reviewing the record before us, the chancellor properly applied, on the record and in

4

detail, each *Armstrong* factor. Further, the record contains substantial credible evidence to support the chancellor's award of periodic and lump-sum alimony to Debra. As a result, this assignment of error lacks merit.

¶7. Thomas also argues the chancellor erred in awarding Debra attorney's fees. Regarding an award of attorney's fees, Mississippi law states that

> [a]n award of attorney fees is appropriate in a divorce case where the requesting party establishes an inability to pay. However, if a party is financially able to pay her attorney, an award of attorney fees is not appropriate. As the issue of whether to award attorney fees in a divorce case is a discretionary matter left to the chancellor, this Court is reluctant to disturb such a finding.

*Williams v. Williams*, 179 So. 3d 1242, 1254 (¶42) (Miss. Ct. App. 2015). In more specifically addressing a chancellor's award of attorney's fees, this Court in *Baswell* further held:

> In *Branch*, the chancellor found that the ex-wife lacked the ability to pay her attorney fees. This Court stated that, although the chancellor never explicitly considered the individual factors, the chancellor found the ex-wife attorney fees reasonable in accordance with *McKee*. Despite some omissions in the chancellor's findings and the lack of a factor-by-factor analysis under *McKee*, we concluded that the chancellor accurately relied on the ex-wife financial position and correctly awarded attorney fees. We therefore found no manifest error in the chancellor's decision to award reasonable attorney fees.

*Baswell*, 217 So. 3d at 758 (¶23) (citations omitted).

¶8. In the instant case, Debra testified about her financial situation. The chancellor heard testimony from both parties concerning Debra's finances during and after the marriage. The chancellor specifically found as follows with regard to the award of attorney's fees:

> We then turn to the issue of attorney fees. Again, under *Armstrong*, attorney fees are generally not allowed unless there is shown to be an inability to pay

5

and are discretionary with the court. Here the plaintiff is without income, is without assets other than the 39 acres, which she inherited, which is tied up in a mortgage with the marital residence. She has had to borrow funds from her relatives in order to pay her attorney. The court first finds that the amount of $8,538.88 has been expended by her for attorney fees, including all expenses. Further, the court finds that she was – is without the ability to pay those fees. Those fees should be paid by the defendant.

The chancellor's decision with regard to attorney's fees was supported by the record and without manifest error. As a result, this issue is without merit.

¶9.     Thomas claims the chancellor erred in classifying the thirty-nine acres of land, inherited by Debra prior to the marriage, as separate property. The marital estate consists only of assets produced by a spouse's efforts. Property obtained through inheritance is the separate property of the individual owner. Merely using inherited property or cash for a joint purpose does not in and of itself equate into a conversion of separate property to marital property. *Everett v. Everett*, 919 So. 2d 242, 248 (¶23) (Miss. Ct. App. 2005). This Court specifically stated in *Everett*, "Harmon argues that this Court should consider Peggy's inheritance to be marital property because Peggy has used part of her inheritance to renovate the marital domicile. We find no merit in this argument." *Id*. Further, we held that the "chancellor was correct in finding that Peggy's inheritance was her separate property." *Id*. Here Thomas offered no testimony during direct examination or cross-examination where he made any claim that he or Debra performed any actions that would transform the inherited property from separate property to marital property. When asked on direct examination by his own counsel what property did he want the judge to award him in the marital estate, Thomas testified as follows:

6

Q.     If you could state which of those items you would like to have, what would they be?

A.     My motorcycle and the apparel and my pictures, personal properties, my daddy's stuff.

Q.     Slow down. Your motorcycle?

A.     My apparel, motorcycle apparel, my daddy's stuff, and my guitars and amp.

Q.     And that is all you want the judge to award you in the marital estate?

A.     Yeah. I mean I'd like to have the four-wheeler, but I don't know if it's there or not.

Without any testimony or evidence to the contrary, the chancellor committed no error in finding the subject thirty-nine acres to be separate property belonging exclusively to Debra though inheritance. As such, this claim is without merit.

¶10.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**